## CAMPBELL v. CHASE NAT. BANK OF CITY OF NEW YORK.

### No. 317.

Circuit Court of Appeals, Second Circuit.

June 18, 1934.

See, also, Campbell v. Medalie, 71 F.(2d) 671.

Frederick B. Campbell, of New York City (Paul C. Whipp and Lounsbury D. Bates, both of New York City, of counsel), for appellant.

Mudge, Stern, Williams & Tucker, of New York City (James F. Sandefur, of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

The appellant in October, 1932, and January, 1933, owned marked bars of gold bullion which he delivered to the appellee for safe-keeping. On September 13, 1933, appellee notified appellant that it was required to surrender such gold bullion because of and pursuant to an executive order of the President of the United States. On September 16, 1933, appellant, in writing, demanded forthwith delivery of the gold to him, which demand was refused. Whereupon this suit was started asking an injunction pendente lite. After answer, a motion for judgment on the pleadings was made by the appellant. Judgment went against appellant, and the complaint was dismissed for want of jurisdiction.

Congress passed an Act March 9, 1933 (48 Stat. 1) under section 2 of which (50 USCA appendix § 5) the President promulgated executive orders dated, respectively, April 5, 1933 (No. 6102 [12 USCA § 248 note]) and August 28, 1933 (No. 6260 [12 USCA § 95 note]). The Act of March 9, 1933, amended section 5 of the Act of Congress of October 6, 1917 (Trading with the Enemy Act), and declared an emergency to exist, making it imperatively necessary and authorizing the President, during such national emergency to "investigate, regulate, or prohibit, under such rules and regulations as he may prescribe * * * hoarding, melting, or earmarking of gold or silver coin or bullion * * * by any person within the United States; * * * and the President may require any person engaged in any transaction referred to in this subdivision to furnish under oath, complete information relative thereto. * * *" For a willful violation of the statute, fine or imprisonment or both might be imposed.

The President's Executive Order of April

5, 1933, declared the national emergency still in existence and prohibited the hoarding of gold coin or gold bullion within the continental United States, and prescribed regulations for carrying out the purposes of that order. By the Executive Order of August 28, 1933, it was declared "that a period of national emergency exists," and provisions were prescribed for the regulation of the hoarding of gold bullion by any person within the United States. Section 3 thereof required a return to the Secretary of the Treasury to be made under oath by every person having gold bullion, the same to be filed with the collector of internal revenue in the district where the individual resided within fifteen days. The time for making the return was later extended to September 18, 1933. Section 10 provided for a fine and punishment for willful violation of this provision. The prior order of April 5, 1933, was revoked. The appellant never complied with this order, for he filed no return but on the contrary demanded delivery and return to him of the bars of gold.

The appellee on January 2, 1934, surrendered the gold to the Treasurer of the United States pursuant to an order from the Secretary of the Treasury. Appellant maintains that the court continues to have jurisdiction. Wingert v. First Nat'l Bank, 223 U. S. 670, 32 S. Ct. 391, 56 L. Ed. 605. The District Court grounded its decision on the want of jurisdiction of the subject-matter and held the cause was not one arising under the Constitution and laws of the United States.

The complaint alleges the appellant's ownership of the gold bars and appellee's promise of safe-keeping. It further alleges:

"That there does not exist any market for gold bullion in the City of New York, nor in the United States; nor can gold bullion be obtained from the Federal Reserve Bank, the United States Assay Office, nor from the Government Mint Office, or elsewhere, except for limited purposes and pursuant to governmental license. That unless the relief herein asked for be granted, complainant will suffer irreparable injury and damage which cannot be recompensed at law, and for which complainant has no adequate remedy at law."

The prayer for relief asks for an injunction restraining the appellee from carrying out its threat to deliver the gold bullion to any Federal Reserve Bank.

The theory of the suit is asserted to be the inadequacy of a remedy at law because of threatened misappropriation and the practical disappearance of the complainant's opportunity to possess gold bullion due to the alleged unconstitutional governmental orders. The argument proceeds that the appellant is entitled to have his specific property returned to him. Money damages are said not to afford an adequate remedy because by the governmental regulations gold cannot be purchased or replaced because it is not obtainable. Moreover, it is said that the executive order cannot apply to appellant's gold, for he purchased it prior to March 9, 1933. It is claimed that, if gold is purchased subsequent to March 9, 1933, with money received as compensation, such gold would come within the ban of the act and the orders. It is admitted that appellant's gold bullion could have been taken by power of eminent domain.

Appellant maintains his action is a suit to protect his specific property, owned with vested title, from wrongful disposition; this upon the theory that delivery to governmental authority is a destruction of his property the same as "if the defendant had threatened to sink it in the sea."

It is conceded that equity will not interfere with the threatened injury to personal property; but it is asserted that the rule is otherwise where inability to replace the property makes money damages inadequate. But the appellant's ownership with right of possession is not dependent upon the federal law or Constitution. Taylor v. Anderson, 234 U. S. 74, 34 S. Ct. 724, 58 L. Ed. 1218. Nor is the bill, as in Hopkins v. Walker, 244 U. S. 486, 37 S. Ct. 711, 61 L. Ed. 1270, maintainable as seeking to remove a cloud on title, or under some local law, showing that but for interposition of the court the appellant may suffer injury. Nor is jurisdiction invoked for other permissible reasons as in Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429, 15 S. Ct. 673, 39 L. Ed. 759, Brushaber v. Union Pacific R. R. Co., 240 U. S. 1, 36 S. Ct. 236, 60 L. Ed. 493, and Smith v. Kansas City Title & Trust Co., 255 U. S. 180, 41 S. Ct. 243, 65 L. Ed. 577. Jurisdiction is claimed solely on the ground that the cause of action arose under the Constitution and laws of the United States. The statute is asserted to be unconstitutional. The general rule is that, when it appears from the bill of the plaintiff that the right to relief depends upon the construction or application of the Constitution or laws of the United States and such federal claim is not merely colorable and rests upon a reasonable foundation, the court has jurisdiction. What constitutes a cause arising under the laws of the United States

has been pointed out by the courts. In First National Bank v. Williams, 252 U. S. 504, 512, 40 S. Ct. 372, 374, 64 L. Ed. 690, it was said:

"One does so arise where an appropriate statement by the plaintiff, unaided by any anticipation or avoidance of defenses, discloses that it really and substantially involves a dispute or controversy respecting the validity, construction or effect of an act of Congress. If the plaintiff thus asserts a right which will be sustained by one construction of the law, or defeated by another, the case is one arising under that law."

Here the claim is colorable, it anticipates a defense, for the claim necessarily rests upon the contention that whatever money appellant might recover at law could not repurchase gold bullion because the statutes and orders make purchases impossible. L. & N. R. R. Co. v. Mottley, 211 U. S. 149, 29 S. Ct. 42, 43, 53 L. Ed. 126; Taylor v. Anderson, supra. The validity or invalidity of the statute and orders does not affect the jurisdiction. If valid, no cause for a federal suit exists; if invalid, a gold purchase was possible. It could be replaced. The cause of suit cannot depend upon the validity of the statute.

There is no diversity of citizenship, and jurisdiction is grounded alone on the claim of a suit arising under the Constitution and laws of the United States. In L. & N. R. R. Co. v. Mottley, supra, the court said:

" * * * That a suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution. It is not enough that the plaintiff alleges some anticipated defense to his cause of action, and asserts that the defense is invalidated by some provision of the Constitution of the United States. Although such allegations show that very likely, in the course of the litigation, a question under the Constitution would arise, they do not show, that the suit, that is, the plaintiff's original cause of action, arises under the Constitution."

It becomes unnecessary, therefore, in this suit, to consider the power of Congress to provide for or to regulate the holding of gold bullion. It is not necessary for us to consider the Act of March 9, 1933, as a constitutional exercise of the power of eminent domain nor whether the act is unconstitutional in the light of the Fifth and Sixth Amendments.

Decree affirmed.