## GRACE CO. v. WILLIAMS et al.
### No. 2915.

District Court, W. D. Missouri, W. D.
July 6, 1937.

Borders, Borders & Warrick and Cooper, Neel, Kemp & Southerland, all of Kansas City, Mo., for plaintiff.

264

Clif Langsdale and C. V. Garnett, both of Kansas City, Mo., for defendants.

COLLET, District Judge.

This is an action brought by the Grace Company, a Missouri corporation engaged in the manufacture, sale, and distribution of infants' and children's garments, for an injunction against certain individuals and Local Union No. 47, for the purpose, as stated in the complaint, of restraining defendants and each of them:

(1) From picketing or parading in front of or around or in the vicinity of the premises of plaintiff's plant located at Kansas City, Mo.

(2) From engaging in any act or conduct at or near said plant or at any place, in anywise calculated to interfere with, among, etc., any officer, agent, or employee of plaintiff in the peaceful pursuit of his or her business or in going to or returning home from plaintiff's plant.

(3) In doing any act calculated to injure or interfere with or disturb any persons making delivery of goods or parcels to the plant, or hauling or conveying goods or parcels from plaintiff's plant.

(4) From interfering in any way with the freedom of a contract negotiated by plaintiff with the Grace Company Workers' Labor Union.

(5) From attempting by intimidation or coercion to compel any of plaintiff's employees to withdraw or resign from an association of employees designated as the Grace Company Workers' Labor Union, or to compel any of the Grace Company employees, by intimidation or coercion, to join the United Garment Workers of America, Local Union No. 47, or any other organization.

(6) From doing any act or acts whatsoever calculated to interfere with business dealings between plaintiff and its customers dealing with it.

The complaint alleges that approximately 50 per cent. of the raw materials from which the garments are manufactured by plaintiff is purchased outside of the state of Missouri and is shipped to plaintiff in interstate commerce, and that more than 80 per cent. of all the products manufactured by plaintiff is sold to customers outside of the state of Missouri and shipped by plaintiff to points outside of the state of Missouri in interstate commerce; that the interruption of the sale of plaintiff's goods and merchandise materially burdens, ob-structs, and interrupts commerce between the states and interrupts the free flow of raw materials from points in the United States outside of the state of Missouri to the plaintiff and materially burdens, obstructs, and interrupts the free flow of manufactured goods from and into the channels of interstate commerce, and materially affects the cost of manufacture and the price of such materials and goods and causes diminution of employment and wages in such volume as substantially to impair the market of goods flowing from and into the channels of commerce.

The foregoing allegation is bottomed upon the following facts: Plaintiff, on May 3, 1937, had in its employ 62 employees working in its plant, other than janitors and mechanics and those in executive positions; 42 of these employees organized a union which they designated the Grace Company Workers' Labor Union and selected 7 representatives designated as a "Union Committee" from among their number for the purpose of collective bargaining in respect to rates of pay, wages, hours of employment, and other conditions of employment. These representatives demanded the right to be recognized by plaintiff as the exclusive representatives of all of plaintiff's employees for the purpose of collective bargaining in respect to the above-stated matters; the Union Committee and the plaintiff negotiated a contract between the Grace Company Worker's Labor Union and plaintiff on May 3, 1937, which contract was duly executed and made provision as to hours of labor per week, minimum wages, the arbitration of disputes, and provided that all plant employees with the exception of janitors and machinists should become and remain members in good standing of the plant union and that all employees holding membership in other unions should become members of the plant union. Since May 3, 1937, and up until the filing of the petition, the defendants and their agents and servants, persistently picketed plaintiff's plant, paraded in front of the plant with banners, and wrote upon space in front of plaintiff's place of business: "Van Brunt Scab Shop Grace Company" (Grace W. Van Brunt being president of the company). The defendants interfered with, molested, and intimidated plaintiff's employees coming to and going from plaintiff's plant and in numerous instances resorted to physical violence, waylaid employees and struck them, tore their clothing, seized parcels from their hands, broke the spectacles of some, forced

others into automobiles, threatened numerous individuals with physical violence, threw at and struck certain employees with rotten eggs, and by those means produced a state of fear of serious personal injury at the hands of defendants in the minds of the employees for the purpose of preventing the employees from continuing their regular work and coercing them into withdrawing from the Grace Company Workers' Labor Union and joining the United Garment Workers of America, Local Union No. 47, in order that plaintiff would be forced to recognize the defendant United Garment Workers of America, Local No. 47 as the exclusive bargaining agency for plaintiff's employees; that the defendants interfered with the delivery to and from plaintiff's plant of interstate and intrastate shipments of merchandise, intimidated, by threats of violence, drivers of trucks carrying merchandise into failing to deliver it to the plant or taking merchandise away from the plant, and forcibly tore boxes and cartons of merchandise destined for interstate shipments from trucks loaded with outgoing shipments of merchandise; that defendants padlocked the entrance to the plant and conspired together to act in concert in the commission of the above-stated acts, for the purpose of interfering with the movement of plaintiff's goods in interstate commerce and with that result.

The petition further alleges that there is no dispute between plaintiff and any of its employees or any group of its employees in respect to rates of pay, wages, hours of employment, or other conditions of employment; that prior to February 15, 1937, plaintiff's plant was located in the basement of the residence of Mrs. Grace W. Van Brunt and employed approximately 8 employees. On that date the plant was moved into a factory building at its present location, considerable sums of money were expended in additional equipment, and the purchase of quantities of raw material and on April 17, 1937, the number of employees had been increased to 62; that the plaintiff company enjoys the good will of the public which is valued at more than $3,000 and which will be totally lost and destroyed if defendants are not enjoined as prayed; that in addition to the loss of good will plaintiff has suffered loss of business and profits and will suffer similar losses in large amounts in the future to an extent in excess of $3,000 and that no adequate remedy at law exists. It is alleged that by reason of the facts stated an emergency and imperative necessity for a temporary restraining order existed. It was prayed that such order issue without notice in order that irreparable injury be avoided. The petition is duly verified by Grace W. Van Brunt, president of plaintiff company.

Upon presentation of the application to the court a temporary restraining order was issued without notice restraining defendants in all of the particulars requested by the petitioners and the cause was set for hearing upon the application for a temporary injunction. Immediately prior to that hearing, a motion to dismiss was filed predicated upon a lack of jurisdiction of the court to hear and determine the cause. At the time set for the hearing the parties agreed to submit the motion to dismiss upon briefs to be thereafter filed, and agreed that the temporary restraining order theretofore issued should remain in full force and effect until the disposition of the motion to dismiss. The disposition of that motion is the sole question for determination at this time.

The parties, with commendable frankness and lack of inconsequential detail, have furnished excellent briefs which are of material assistance.

Plaintiff concedes that there is no diversity of citizenship, but asserts that this court has jurisdiction because:

"1. The matter in controversy arises under a law of the United States, and consequently there is federal jurisdiction under subsection 1, of section 41, 28 U.S.C.A.," and

"2. The petition seeks to enjoin a conspiracy in restraint of interstate commerce and consequently there is jurisdiction under the Sherman Act, 15 U.S.C.A. § 9 [section 4] as well as under the provisions of section 41(1) of the Judicial Code [28 U.S.C.A.]"

Defendants insist that jurisdiction cannot be predicated upon section 41(1), title 28, U.S.C.A., for the reason that, (a) the action does not involve the constitutionality, validity, or construction of either the Norris-La Guardia Act (sections 101–115, title 29, U.S.C.A.) or the Wagner-Connery Labor Relations Act (sections 151–166, title 29, U.S.C.A.), and (b) because the controversy is a labor dispute as defined in the Norris-La Guardia Act, and hence the latter act applies and deprives this court of jurisdiction to grant the relief prayed since there is a total absence of any allegation complying with the requirements of section 107, supra, and a failure to observe the re-

quirements and restrictions enumerated in section 104, supra.

It is conceded by plaintiff that the petition does not allege the precedent conditions set forth in section 107, but it is contended that the determination of the controversy involved in this action depends upon the construction to be given to the Wagner Act, asserting that by a proper construction of the latter act the right is given plaintiff to contract with one and only one entity representing its employees, in this instance the "Union Committee," that this right is one which may be enforced in and protected by a federal court of equity, and that the controversy is not a labor dispute as defined in the Norris-La Guardia Act making the latter act inapplicable, and that for those reasons its terms need not be complied with as a condition precedent to the granting of the relief prayed.

With the issues thus circumscribed, the contention of the parties will be considered in the order presented.

■ First. Does the action involve a federal question upon the ground that the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, and "(a) arises under the Constitution or laws of the United States"? Subsection 1, § 41, title 28, U.S.C.A.

It is apparently conceded that the amount in controversy exceeds the requisite jurisdictional requirement.

While it is not sufficient that the origin of plaintiff's right lies in the laws of the United States (Shulthis v. McDougal, 225 U.S. 561, 32 S.Ct. 704, 56 L.Ed. 1205), where the action substantially involves a dispute or controversy respecting the construction or effect of an Act of Congress, or stated otherwise, when a party asserts a right which will be sustained by one construction of the law or defeated by another, the case is one arising under the law. First National Bank v. Williams, 252 U.S. 504, 40 S.Ct. 372, 64 L.Ed. 690; Smith v. Kansas City Title Co., 255 U.S. 180, loc. cit. 199, 41 S.Ct. 243, 244, 65 L.Ed. 577; Campbell v. Chase Nat. Bank (C.C.A.) 71 F.(2d) 669, 94 A.L.R. 708. The present controversy, involving as it does the construction to be given the Wagner Act, is one cognizable by this court.

■ Second. Does the Wagner Act confer upon plaintiff an affirmative right which may be enforced in a court of equity?

Although the case of Virginian Railway Co. v. System Federation No. 40 et al., 57 S. Ct. 592, 81 L.Ed. 789, decided by the Supreme Court, March 29, 1937, involved the question of whether a labor union representing a majority of the employees was given the right by the Railway Labor Act, as amended (45 U.S.C.A. §§ 151–163) to enforce, in a court of equity, the obligation placed upon the employer by the act to deal with that union exclusively, upon principle that opinion supports plaintiff's contention. If, as that opinion holds, the Railway Labor Act (which is similar to the Wagner Act in the respect involved here) compels an employer to deal with one representative of his employees and only one, the imposition of the duty must of necessity carry with it the right on the part of the employer to insist upon and enforce, if necessary, its right to perform that duty. And if the right to exact of the employer the duty of contracting with one agency is one which may be enforced in equity without a specific provision to that effect in the act itself, then, for equally compelling reasons, the right to perform that duty must likewise be one which may be enforced in a court of equity without a specific provision to that effect. See, also, Texas & N. O. R. Co. v. Ry. & S. S. Clerks, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034.

Third. Does the petition sufficiently allege that the plaintiff is engaged in "commerce" as that term is defined by the Wagner Act so as to make the Wagner Act applicable to plaintiff's relations with its employees?

By the recent decision of the Supreme Court in National Labor Relations Board v. Jones & Laughlin Steel Corporation, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352, decided April 12, 1937, the constitutionality of the Wagner Act was upheld and the act declared to be applicable only where the controversy affected commerce among the several states. It appears to me to be extremely doubtful that the allegations of the petition, stripped of conclusions, state facts sufficient to show the existence of a controversy affecting interstate commerce as that term is construed in the cases of United Mine Workers v. Coronado Coal Co., 259 U. S. 344, 407, 42 S.Ct. 570, 581, 66 L.Ed. 975, 27 A.L.R. 762, National Labor Relations Board v. Jones-Laughlin Steel Corporation, supra, and National Labor Relations Board v. Friedman-Harry Marks Clothing Co., 57 S.Ct. 645, 81 L.Ed. 921, 108 A.L.R. 1352, also decided by the Supreme Court April 12, 1937. But since the question is not raised

by the parties, I will assume the applicability of the Wagner Act for the purpose of determining other issues raised by the present motion.

Fourth. Is the enforcement of the right conferred upon the *employer* by the Wagner Act governed and controlled by the provisions of the Norris-La Guardia Act? The negative is vehemently asserted by the plaintiff, while an affirmative answer is equally forcibly advanced by the defendants.

Plaintiff places its reliance upon a number of decisions. First among them is the Virginian Railway Company Case, supra. As heretofore indicated, that case dealt with the right of duly authorized representatives of employees to insist upon the recognition of those representatives by the employer and noninterference by the employer with the free selection of representatives of the employees for the purpose of contracting with the employer. As also heretofore noted, the court upheld the right of the representatives of the employees to enforce, in a court of equity, the duty placed upon the employer by the Railway Labor Act (as amended [45 U.S.C.A. § 151 et seq.]). In that case, the employer asserted the applicability of the Norris-La Guardia Act. The court held that the Norris-La Guardia Act did not apply. I am convinced that the reason for the nonapplicability of the latter act in that case was because of the fact that, as the court pointed out, the Norris-La Guardia Act had as its evident purpose the prohibition of blanket injunctions against labor unions, usually prohibitory in form, and was not intended to preclude mandatory injunctions of the character involved in the case there presented. Otherwise stated, it was held that the Norris-La Guardia Act did not operate to prevent compelling the employer to deal with authorized representatives of its employees, and was not intended to so operate. The opinion states that in the case before the court it was sufficient to say that the Norris-La Guardia Act could affect the decree only in so far as the provisions of that act might be found to conflict with those of the Railway Labor Act. If any implication is to be drawn from that opinion, it is contained in the statement of the court last above referred to, which indicates that in a case under the Railway Labor Act where a blanket injunction is sought against labor unions, the Norris-La Guardia Act would be applicable to the extent that the terms of that act were not in conflict with the provisions of the later Railway Labor Act.

Plaintiff insists that the Norris-La Guardia Act cannot be applicable under the circumstances presented in the case at bar because that act requires as one of its conditions precedent to injunctive relief a resort on the part of the employer to all reasonable efforts to settle the dispute either by negotiation or with the aid of any available governmental machinery or voluntary arbitration (section 108, supra), and that since in this case plaintiff's controversy is with parties who are concededly not the authorized representatives of the plaintiff's employees, to follow the requirement of the Norris-La Guardia Act that it deal with these parties would compel plaintiff to violate the explicit terms of the Wagner Act. To the extent that the Norris-La Guardia Act requires negotiation or dealing with defendants in this case as a necessary prerequisite for an application for injunctive relief, plaintiff's position is correct. The expression of the Supreme Court to the effect that the Norris-La Guardia Act could not apply in so far as its provisions conflicted with the rights conferred or obligations imposed by the Railway Labor Act is sufficient authority for the position stated. The Norris-La Guardia Act is general in its character and was passed prior to the enactment of the Wagner Act or the Railway Labor Act. At the time of its enactment the obligations imposed upon the employer with respect to dealing with the duly constituted representatives of the employees alone and as a unit had not been imposed. The later establishment of those obligations by the latter act operated to create an exception to the general provisions of the Norris-La Guardia Act, with the result that employers by reason of the recently established obligation to deal with one entity and one alone were necessarily not required to deal or negotiate with any other.

The case of Myers v. Louisiana & A. Ry. Co. (D.C.) 7 F.Supp. 92, cited by plaintiff, does not support plaintiff's position. The petition there alleged compliance with the requirements of the Norris-La Guardia Act. The court specifically found that those requirements had been met by the plaintiff and evidently based its right to issue the restraining order upon the compliance by plaintiff with the provisions of the Norris-La Guardia Act. That case should, therefore, be regarded as at least giving its tacit

approval to the theory that the Norris-La Guardia Act applied.

■ The majority and dissenting opinions in Duplex Co. v. Deering, 254 U.S. 443, 479, 41 S.Ct. 172, 178, 181, 65 L.Ed. 349, 16 A.L.R. 196, furnish historical background for the reasons for the enactment of the Norris-La Guardia Act. At the time those opinions were delivered, the predecessor act to the Norris-La Guardia Act, known as the Clayton Act, contained a provision (section 20 [29 U.S.C.A. § 52]) that "no restraining order or injunction shall be granted by any court of the United States, or a judge or the judges thereof, in any case between an employer and employees, or between employers and employees, or between employees, or between persons employed and persons seeking employment, involving, or growing out of, a dispute concerning terms or conditions of employment, unless," etc. The majority opinion held that the qualifying words "a dispute concerning terms or conditions of employment," operated to confine the restriction upon the granting of injunctions set up by the Clayton Act, to controversies between "parties standing in proximate relation to a controversy such as is particularly described," i. e., involving or growing out of a dispute concerning terms or conditions of employment, 254 U.S. 443, loc. cit. 471, 41 S.Ct. 172, 178, 65 L.Ed. 349, 16 A.L.R. 196. The Circuit Court of Appeals (252 F. 722) had in that case denied the injunction because in its opinion the Clayton Act applied to "the business class or clan to which the parties litigant respectively belong[ed]." The Supreme Court disagreed with the Court of Appeals in that regard, the majority opinion holding in effect that the Clayton Act as it then stood applied only to parties standing in the proximate relation of employer and employee. The dissenting opinion, three Justices concurring, held that the act was not aimed merely at the relationship between a specific employer and his employees. The divergent lines of thought between the majority and the minority of the court as to the scope of the Clayton Act demonstrate two things: First, that neither the majority or minority questioned the potency of the Clayton Act to prevent the issuance of injunctions in the class of cases to which that act applied; and, second, it demonstrates that the motivating cause of the amendment of the Clayton Act by the enactment of the Norris-La Guardia Act was to enlarge the scope of the former to apply to "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, *regardless of whether or not the disputants stand in the proximate relation of employer and employee.*" It seems perfectly obvious that if any force at all is to be given to the italicized words of the above-quoted act, no court should any longer adhere to the position that the class of controversies in which the federal courts are prohibited from issuing injunctions are still confined to the narrow limits of the Clayton Act, but must, under the plain provisions of the later legislation, extend that class of cases to those involving labor disputes between parties *regardless of whether or not those parties stand in the proximate relation of employer and employee.*

■ In the case of Cinderella Theater Co. v. Sign Writers' Local Union (D.C.) 6 F. Supp. 164, the plaintiff theater company sought injunctive relief against the Sign Writers' Local Union to prevent the defendant from interfering with its business by throwing stench bombs into its theater and picketing at and adjacent to its theater entrance in an effort to compel the plaintiff to discharge a nonunion sign writer who had been employed by plaintiff for a number of years and with whom the plaintiff had no fault to find. The court held that the Norris-La Guardia Act was applicable because: (1) The case involved persons who were engaged in the same industry, (2) it involved persons having a direct or indirect interest in the same industry, and (3) it involved conflicting interests in a labor dispute of persons participating or interested therein. 29 U.S.C.A. § 113(a).

The court held that the action involved a labor dispute as defined by subsection (c) of section 113 of the act, because it was a controversy concerning terms or conditions of employment and because it was a controversy concerning the association of persons in seeking to arrange terms or conditions of employment. 6 F.Supp. 164, loc. cit. 169.

Explanatory of the latter position, the court said:

"By the express terms of the statute, this is none the less a 'labor dispute' because of the fact that none of the officers or members of the defendant union have any contractual relation with the plaintiffs, and none of 'the disputants stand in the proximate relation of employer and employee.' If the applicability of the statute were otherwise doubt-

ful, such doubt would be removed by a consideration of the following language in the report of the House Committee on the Judiciary (H.R. Report 669, 72d Congress, First Session), favorably reporting the bill (H.R. 5315) a few days before its passage:

" 'In the case of Duplex Printing Press Co. v. Deering, (254 U.S. 443, 41 S.Ct. 172, 65 L.Ed. 349, 16 A.L.R. 196), decided January 3, 1921, and being a six to three decision, the court held so far as pertinent to this particular discussion that this section of the Clayton Act provided a restriction upon the use of the injunctions in favor only of the immediate disputants and that other members of the union not standing in the proximate relation of employer and employee could be enjoined. Of course, it is fundamental that a strike is generally an idle gesture if confined only to the immediate disputants. This is intended to be remedied by the later provision in this act defining the meaning of the term, "person participating in a labor dispute," as to whom, as in the bill defined, the courts are deprived of jurisdiction to issue injunctions in the specified instances set forth in this section. * * *

" 'Section 13 contains definitions which speak for themselves. It is hardly necessary to discuss them other than to say that these definitions include, as hereinabove stated, a definition of a person participating in a labor dispute which is broad enough to include others than the immediate disputants and thereby corrects the law as announced in the case of Duplex Printing Press Co. v. Deering, supra, wherein the Supreme Court reversed the circuit court of appeals (252 F. 722) and held that the inhibition of section 20 of the Clayton Act (29 U.S.C.A. § 52) only related to those occupying the position of employer or employee and no others. The Supreme Court held to the same effect in the case of the American Steel Foundries v. Tri-City Central Trades Council, 257 U.S. 184, 42 S.Ct. 72, 66 L.Ed. 189, 27 A.L.R. 360, supra.'

"The same purpose to make this statute applicable to a case such as is presented here is also manifested by the following language of the report of the Senate Committee on the Judiciary (S.R.Report 163), favorably reporting the same bill (S.935) at the same session of Congress:

" 'Section 13 of the bill defines various terms used in the act, and it is not believed that any criticism has been or will be made to these definitions. * * * In order

that the limitation may not be whittled away by refined definitions of what persons are to be regarded as legitimately involved in labor disputes, the bill undertakes specifically to designate those persons who are entitled to invoke the protections of the procedure required.' "

In the case of Dean v. Mayo (D.C.) 8 F.Supp. 73, plaintiff sought injunctive relief under the Sherman Anti-Trust Act (15 U.S.C.A. § 1 et seq.). Defendants were individuals and a Longshoreman's Association. It was alleged that the defendants were unlawfully interfering with the plaintiff's business and were intimidating plaintiff's employees for the purpose of preventing the discharge of their duties in an effort to force plaintiff to employ members of the defendant association. Plaintiff was engaged in interstate commerce. There was a motion to dismiss, upon the grounds, among others, that the petition did not allege compliance with the provisions of the Norris-LaGuardia Act (section 108). The court first overruled the motion upon the theory that the action did not involve a labor dispute because there was no relationship of employer and employee between defendants. On mature consideration, after consideration of the Cinderella Case, supra, the court held that the action was a labor dispute within the meaning of the Norris-LaGuardia Act and sustained the motion because of the failure of the complainant to allege a compliance with the conditions precedent laid down in section 108 of that act.

That case did not involve an asserted right by the employer under the Wagner Act to deal exclusively with some agency other than the defendants, but, as stated, was based upon an alleged violation of the Sherman Act. It, therefore, is not entirely parallel with the case at bar. In so far as it holds that section 108 required negotiations with parties defendant as a prerequisite to the issuance of an injunction, it is inapplicable. It is, however, authority upon the question of whether the controversy herein involved is a labor dispute within the meaning of the Norris-LaGuardia Act.

In the case of Levering & Carrigues Co. v. Morrin, 71 F.(2d) 284 (C.C.A.2), plaintiff obtained from the District Court an injunction against the defendants to restrain and enjoin them from sending warning circulars to architects or contractors (in which circulars it was stated that union members would refuse to work upon buildings upon which plaintiffs might have or secure sub-

contracts) and to prevent defendants from attempting by coercion, threats, or intimidation, to compel or influence owners, architects, or general contractors not to patronize plaintiff. The master found, among other things, that the dispute was not attended by fraud or violence and that the defendants did not stand in the direct relationship of employees with the employer (plaintiff) (loc. cit. 286). The Circuit Court of Appeals reversed the District Court holding that the injunctive relief granted was in violation of the Norris-LaGuardia Act and that the cause grew out of a labor dispute as defined in section 113(c) of that act. In the course of the opinion the court referred to the Duplex Printing Press Co. v. Deering Case and construed the opinion in that case as recognizing that the statute (Clayton Act, supra) imposed restrictions upon the powers of a federal court of equity with the result that because of these restrictions certain privileges or immunities were granted to a particular class which class was defined in Duplex Printing Press Co. v. Deering, supra, to include only those occupying the proximate relationship of employer and employee. Since the controversy in that case was between parties which did not occupy the proximate relation of employer and employee, and the court had before it the opinion in the Duplex Printing Press Case and the Norris-LaGuardia Act and held that a labor dispute as defined by that act was involved, the opinion is authority in the case at bar.

The Wisconsin Supreme Court in the case of American Furniture Co. v. Teamsters & Helpers Local No. 200, 222 Wis. 338, 268 N.W. 250, 106 A.L.R. 335, in construing provisions of the Wisconsin statute similar to subsection (c) of section 113 of the Norris-LaGuardia Act concluded that a controversy between parties not occupying the proximate relation of employer and employee was a labor dispute within the meaning of the Norris-LaGuardia Act and the Wisconsin Code.

The cases of United Electric Coal Companies v. Rice (C.C.A.) 80 F.(2d) 1, and Lauf v. Shinner & Co. (C.C.A.) 82 F.(2d) 68, announce a contrary conclusion. These cases were subsequently followed by the same court (C.C.A.7) in the case of Scavenger Service Corporation v. Courtney, 85 F.(2d) 825. The Lauf Case briefly refers to the case of Levering & Carrigues Co. v. Morrin, Cinderella Theater Co. v. Sign Writers' Local Union, supra, and Miller

Parlor Furniture Company, Inc. v. Furniture Workers' Industrial Union (D.C.) 8 F. Supp. 209, and states [82 F.(2d) 68, loc. cit. 73]:

"In the first two of these cases the facts are not closely analogous to the facts before us, and in the third case there seems to have been no expressed consideration of the public policy as defined in the Norris-LaGuardia Act. For these reasons we do not feel justified in following the conclusions there reached in the respects mentioned. Other similar cases have been called to our attention but we think they do not give proper heed to the declared public policy by which we must be controlled."

If, as stated in the Lauf Case, the facts there presented differ from the facts presented in the Cinderella Theater Co. Case and others of similar import with the result that the latter cases were not persuasive or controlling in the Lauf Case, then, in my judgment, the Lauf Case and the other cases determined by the Court of Appeals of the 7th Circuit are not controlling in the case at bar since, in my judgment, the case before me cannot be distinguished from the Levering Case or the Cinderella Theater Co. Case.

Since the petition does not undertake to allege a compliance with the requirements of the Norris-LaGuardia Act (other than the requirement of section 108 providing for attempted settlement which I do not find applicable), the motion to dismiss is sustained.