20 F.Supp. 894 (1937)
CUPPLES CO.
v.
AMERICAN FEDERATION OF LABOR et al.
No. 12294.
District Court, E. D. Missouri, E. D.
September 4, 1937.
Luther Ely Smith, of St. Louis, Mo., for plaintiff.
Bartley & Mayfield, of St. Louis, Mo., for defendants.
COLLET, District Judge.
By this action plaintiff seeks to enjoin numerous named defendants, individually and as officers and agents of certain labor unions, from continuing to maintain a strike of employees at plaintiff's plant, from threatening, intimidating, insulting, using violence toward employees, congregating upon plaintiff's property or in the vicinity thereof, deterring or attempting to deter plaintiff's employees from working in plaintiff's factory.
Plaintiff is a manufacturing corporation engaged in business at St. Louis, Mo. The verified petition requests the issuance of a temporary restraining order without notice. This was denied, but an order to show cause why a temporary injunction should not be granted pending the hearing *895 of the cause on its merits was issued returnable August 30, 1937. On that date the parties appeared and evidence was offered in support of the application for a temporary injunction. Some evidence was offered by the defendants on the same issue.
Briefly summarized, the petition seeks the relief referred to upon the following alleged facts: Plaintiff is engaged in interstate commerce; the value of its business which will be lost greatly exceeds the jurisdictional amount; its employees have formed a union known as the Mutual Relations Association, the membership of which is composed entirely of plaintiff's employees and includes in its membership approximately 75 per cent. of plaintiff's 400 employees. This union was organized in the month of July, 1937. On August 4, 1937, a contract was entered into between the plaintiff company and the Mutual Relations Association recognizing that association as the sole collective bargaining agency for plaintiff's employees. The plaintiff at no time dominated or interfered with the formation or administration of the Mutual Relations Association or contributed financially or otherwise to its organization or support. At some time prior to the 20th of July, 1937, one of the defendants, acting for and on behalf of the Match Workers Federal Labor Union and the defendant American Federation of Labor, undertook to organize as an independent local union to be affiliated with the American Federation of Labor, the Match Workers Federal Labor Union, Local No. 20927, the membership of which was to be composed of employees in plaintiff's match department. At the same time, i. e., prior to July 20, 1937, another defendant, acting on behalf of the International Association of Machinists and the American Federation of Labor, undertook to organize a local of the International Association of Machinists, District No. 9, the membership of which was to consist of employees of plaintiff's match department employed as machinists. (The parol testimony indicates that these two latter local unions were actually formed and recognized by the American Federation of Labor.) On or about July 20, 1937, a representative of the Match Workers Federal Labor Union No. 20927 and the American Federation of Labor filed with the Regional Director of the National Labor Relations Board in the city of St. Louis, Mo., complaints charging plaintiff with the violation of subsections 1, 2, 3, and 5 of section 8 of the National Labor Relations Act (29 U.S.C. A. § 158 (1, 2, 3, 5). Thereafter, on August 3d, the same person acting for the same organization filed formal charges in writing under and in accordance with section 1, article II, of the Rules and Regulations of said National Labor Relations Board, charging that the plaintiff had engaged in and was engaging in unfair labor practice within the meaning of section 8, Subsections 1, 2, 3, and 5, of the National Labor Relations Act, 29 U.S.C.A. § 158 (1, 2, 3, 5). Similar complaints and formal charges were filed on behalf of the International Association of Machinists, District No. 9. On August 3, 1937, a petition for an investigation and certification of representatives of the employees of the plaintiff's match department was filed by the Match Workers Federal Labor Union No. 20927 with the National Labor Relations Board. That petition alleged that the question concerning representation of plaintiff's employees was a question affecting commerce within the meaning of the National Labor Relations Act, and requested that the National Labor Relations Board, pursuant to section 9(c) of said Act (29 U.S.C.A. § 159(c), investigate and certify to the parties the names of the representatives that had been designated or selected by the employees of plaintiff's match department. A similar request for investigation and certification was filed on behalf of the International Association of Machinists, District No. 9, on August 3, 1937. On August 6, 1937, in response to a request from the Regional Director of the National Labor Relations Board, plaintiff, represented by counsel, attended a conference at the office of the Regional Director where it, plaintiff, was informed of the filing of the charges and petition for investigation. Plaintiff thereupon expressed a desire and readiness for an immediate investigation, report, and hearing by the National Labor Relations Board, waived all formalities, admitted the jurisdiction of the Board over the controversy and over plaintiff, and requested a hearing by the Board at the earliest possible date, to the end that the National Labor Relations Board should determine the truth of the charges made, and should also determine the question of what was the proper unit for collective bargaining within the meaning of the Wagner Act, and thereby determine whether the Mutual Relations Association was the proper bargaining agency for the *896 employees in plaintiff's match department. At this conference it was indicated that if the National Labor Relations Board determined that a hearing should be had upon the charges made, such hearing could not be held prior to September 6, 1937. On August 13, 1937, the representative of the Match Workers Federal Labor Union No. 20927 informed plaintiff that the members of the latter union had voted to strike, and that they would not wait until a hearing could be had before the National Labor Relations Board to determine whether it or the Mutual Relations Association was the proper collective bargaining agency for the plaintiff's match department employees, and that unless plaintiff would agree to bargain collectively with the Match Workers Federal Labor Union No. 20927, and with the International Association of Machinists, District No. 9, a strike would be called in the match department of plaintiff's business. Plaintiff pointed out to representatives of these unions that they had invoked the jurisdiction of the National Labor Relations Board, that plaintiff had submitted to the jurisdiction of that board, and that to now make the demand referred to amounted to a demand that plaintiff, under threat of a strike being called, abandon the jurisdiction of the National Labor Relations Board as to the essential questions which the Labor Board had been asked by the Match Workers Federal Labor Union No. 20927 and the International Association of Machinists, District No. 9, to determine, and that plaintiff could not comply with that demand. On August 16, 1937, by letter bearing that date addressed to and received by the Regional Director of the National Labor Relations Board, the Match Workers Federal Labor Union No. 20927 and the International Association of Machinists, District No. 9, undertook to withdraw the petitions for investigation and certification of representatives theretofore filed by them. Plaintiff asserts that the charges were not actually withdrawn, but remain on file with the Regional Director, and that some of the charges involved the determination of the question as to what is the proper bargaining unit to represent the plaintiff's match department employees. On the morning of August 17, 1937, the threatened strike was put into effect among the employees of the plaintiff's match department, and is still in effect. As a result, plaintiff closed its match plant, and has not reopened it. Members of the unions referred to are picketing plaintiff's other plants and by threat of violence, intimidation, and insults have attempted to deter and have deterred other employees from working in plaintiff's plants. Large numbers of the members of the unions referred to congregate on plaintiff's property, adjacent to its match plant, and on the streets about the plant, and en masse threaten and intimidate plaintiff's employees who desire to continue at work, and endeavor by such methods to induce and frighten plaintiff's employees from continuing in their work. There is no dispute between plaintiff and its employees with reference to wages, hours, or working conditions, and no demands in reference to wages, hours, or working conditions have been made on plaintiff by the labor unions or either of them; their sole demand consisting of an insistence that plaintiff recognize these unions as the bargaining agents for plaintiff's match department employees.
It is asserted that the cause does not involve a labor dispute, "but on the contrary involves the question of whether or not a party that has invoked the jurisdiction of a special tribunal to decide a controversy, which tribunal under the law is the sole tribunal qualified and equipped to render a speedy decision, may, by the exercise of duress, compel the party against whom charges have been filed, to withdraw from that jurisdiction and concede the essential questions to be determined; and the further question as to whether outside labor organizations may come in, and by threat of strike, force an employer to deal with them, when the employer already has a contract with a labor organization for the purpose of collective bargaining."
It is readily apparent from the facts outlined and the above-quoted excerpt from the petition that plaintiff bases its right to the relief asked upon the theory that the Wagner-Connery Labor Relations Act (29 U.S.C.A. § 151-166) gives to it a right which may be enforced in a court of equity. Such right being the privilege of having the National Labor Relations Board determine what agency plaintiff shall recognize as the sole bargaining agent for its employees, and furthermore, that plaintiff shall be protected by this court in carrying out without interference the legal obligation imposed upon plaintiff by the Wagner Act to deal with one agency and one alone as the collective bargaining agent of its employees. With that as a premise, *897 plaintiff contends that any interference with the determination by the National Labor Relations Board of the identity of the agency which shall represent plaintiff's employees, deprives plaintiff of a substantive right conferred, as stated above, by the Wagner Act, and hence is unlawful and may be restrained.
The writer has heretofore had occasion to consider the question as to whether the Wagner Act conferred upon the employer a right which might be enforced by a court of equity. Grace Company v. Leonard Williams et al., 20 F.Supp. 263, in the District Court for the Western Division of the Western District of Missouri. In a memorandum opinion filed in the above case, it was stated: "Although the case of Virginian Railway Co. v. System Federation No. 40 et al., [300 U.S. 515] 57 S.Ct. 592, 81 L.Ed. 789, decided by the Supreme Court, March 29, 1937, involved the question of whether a labor union representing a majority of the employees was given the right by the Railway Labor Act, as amended (45 U.S.C.A. §§ 151-163) to enforce, in a court of equity, the obligation placed upon the employer by the act to deal with that union exclusively, upon principle that opinion supports plaintiff's contention. If, as that opinion holds, the Railway Labor Act (which is similar to the Wagner-Connery Labor Relations Act [29 U.S.C.A. §§ 151-166] in the respect involved here) compels an employer to deal with one representative of his employees and only one, the imposition of the duty must of necessity carry with it the right on the part of the employer to insist upon and enforce, if necessary, its right to perform that duty.
"And if the right to exact of the employer the duty of contracting with one agency is one which may be enforced in equity without a specific provision to that effect in the act itself, then, for equally compelling reasons, the right to perform that duty must likewise be one which may be enforced in a court of equity without a specific provision to that effect. See also Texas & N. O. R. Co. v. Ry. Clerks, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034."
No reasons are advanced for the departure from the conclusion expressed in the above-quoted excerpt from the memorandum opinion in the Grace Case. If that conclusion is correct, as I think it is, then it must follow that plaintiff has the legal right, conferred by the Wagner Act, to deal exclusively with the agency found by the National Labor Relations Board to represent the majority of its employees, after that fact has been determined by that Board. Whether plaintiff has the right to enforce noninterference with its desire to have the National Labor Relations Board hear and determine the question referred to is another matter. But assuming, while not determining, that plaintiff does have such a right, still may that right be enforced in this court by injunction in a case of this character? In my judgment, it cannot. The Norris-LaGuardia Act defines a labor dispute as follows (subsection c, section 113, title 29, U.S.C.A.): "The term `labor dispute' includes any controversy concerning * * * the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee."
I think it clear from the allegations in the petition that the defendant labor unions and their individual representatives are demanding the right to represent the employees of the plaintiff's match department. It obviously follows that the conclusion in the petition to the effect that this controversy is not a "labor dispute" is incorrect, and that the facts in this case bring the controversy within the above-quoted definition of a labor dispute. That being true, the Norris-LaGuardia Act (sections 101-115, title 29, U.S.C.A.) must apply. Certain inhibitions and limitations are therein expressed and placed upon this court. Among them is the following (section 101): "No court of the United States * * * shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter."
Elsewhere in the chapter referred to (section 107) Congress provides that:
"No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as herein defined, except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of *898 the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect 
"(a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained. * * *
"(b) That substantial and irreparable injury to complainant's property will follow;
"(c) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief;
"(d) That complainant has no adequate remedy at law; and
"(e) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection."
The same section further provides that no temporary restraining order or temporary injunction shall be issued except on condition that complainant shall first file a bond in an amount sufficient to recompense those enjoined for any loss or expense caused by improvident or erroneous issuance of such order or injunction.
Are the acts alleged in plaintiff's petition unlawful acts? Subsection (a) above quoted, does not define the term "unlawful acts," but by section 104 Congress has declared what shall not be so considered. Among them are the following:
"(a) Ceasing or refusing to perform any work or to remain in any relation of employment; * * *
"(c) Paying or giving to, or withholding from any person participating or interested in such labor dispute, any strike or unemployment benefits or insurance, or other moneys or things of value; * * *
"(e) Giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence;
"(f) Assembling peaceably to act or to organize to act in promotion of their interests in a labor dispute; * * *
"(i) Advising, urging, or otherwise causing or inducing without fraud or violence the acts heretofore specified, regardless of any such undertaking or promise as is described in section 103 of this chapter."
Subsection (a), above quoted, declares that "striking" is not unlawful; by subsection (c), the financial maintenance of the strike is declared not to be unlawful. By Subsections (e), (f), and (i), picketing or efforts to induce others to join the cause sponsored by the pickets is not unlawful so long as it is not accompanied by fraud or violence. Therefore, this court may not grant plaintiff's request to enjoin financial maintenance of the strike for the obvious reason that Congress has declared in effect that such acts are not unlawful and that: "No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts." Section 104. (Followed by the above-quoted subsections.)
Assuming that the petition charges violence or fraud on the part of defendants in their picketing activities or their efforts to secure converts to their cause, Does the Norris-LaGuardia Act permit the granting of injunctive relief in the absence of the allegation supported by proof produced in open court, "that the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection"?
The term "public officers" used in the above-quoted subdivision (e) of section 107 has been generally understood and defined by the courts to mean local law enforcing officers, i. e., state, county, or city. There is no charge in the petition that the local law-enforcing agencies of the city of St. Louis are either unable or unwilling to furnish adequate protection. On the contrary, the parol testimony shows beyond doubt that the city of St. Louis has been most active and zealous in the performance of its duty to furnish police protection. It appears from the evidence that the police department, when called upon to patrol the plaintiff's property or to furnish escorts for any of plaintiff's employees, responded promptly and efficiently.
I am impelled by my conception of the duty of this court to give to this act of Congress, as well as all others, its clear meaning, and to follow the mandate expressed therein. If the provision last referred *899 to, to the effect that this court shall not issue a restraining order or temporary injunction unless it appear that the local authorities are unable or unwilling to furnish adequate protection means anything at all, it means exactly what it says, and must be observed. Obviously, Congress intended that the federal courts should not interfere in labor disputes, even where there was violence or fraud, unless it appeared that the local law-enforcing agencies were unwilling or unable to furnish adequate protection. The question promptly arises: What alleged facts or what proof would be sufficient to establish the fact that local officials are unable or unwilling to furnish adequate protection? Of course, if there should be a definite declaration on the part of those officials of unwillingness to act that would be sufficient in that respect. Likewise, if, after active co-operation by local officials, bloodshed or violence resulted in spite of that co-operation and assistance, the proof of such facts would be sufficient. But certainly Congress did not intend that this court should await the declaration on the part of local officers of their unwillingness to perform their duty. Most certainly it did not intend that this court should stand by until actual bloodshed, strife, and violence occur before it should lend its aid to then merely prevent a repetition of what Congress evidently intended should be prevented in the first instance. Therefore, a reasonable interpretation of the inhibition contained in subsection (e) is that if the facts are alleged or proof adduced which are sufficient to justify the conclusion that, absent injunctive relief, the "local officials" as that term has been defined, are unwilling or may be unable to furnish adequate protection, injunctive relief may be granted by this court. Measured by this standard of pleading or proof, however, the petition and the evidence entirely fails to create the impression that the local authorities are either derelict in their duty or unable to furnish necessary protection.
In addition to the foregoing, the absence of a bond required by section 107, 29 U.S. C.A., is fatal to the granting of the relief prayed.
My conclusions may be summarized as follows:
A controversy between a labor union and an employer over the question of whether such union shall be recognized as the sole collective bargaining agent for the employer's employees is a "labor dispute" to which the provisions of the Norris LaGuardia Act and the Wagner Act apply in any proceeding instituted in this court.
Plaintiff has a right conferred by the Wagner Act to insist upon noninterference in its compliance with the mandate of that act to the effect that it shall deal with the agency representing the majority of its employees when that agency has been properly ascertained and determined, and with that agency alone.
Assuming, but not determining, that it has the right to insist upon noninterference with its desire to have the National Labor Relations Board determine and certify the agency which represents the majority of its employees, still, plaintiff may not enforce that right in this court by injunction unless it complies with the requirements of the acts of Congress to the effect that the facts be produced which lead to the conclusion that the local officials are either unwilling or would be unable to furnish adequate protection.
That a bond, as provided in section 107, title 29 U.S.C.A., must be filed.
One further proposition advanced by plaintiff merits attention. Plaintiff contends that the Norris-LaGuardia Act is not applicable to this proceeding for the reason that section 8 (section 108, title 29 U.S.C.A.), provides that no injunctive relief shall be granted to any complainant who has failed to make every reasonable effort to settle the dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration, and that since the question before the National Labor Relations Board is one to determine what agency shall be the sole and exclusive bargaining agent, the application of section 8 of the Norris-LaGuardia Act to this case would result in plaintiff being required, as a prerequisite to injunctive relief, to arbitrate with an agency other than the one which the Board may ascertain to be the only one which plaintiff may negotiate with. Otherwise stated, plaintiff insists that the entire Norris-LaGuardia Act is inapplicable because the National Labor Relations Board may determine that the Mutual Relations Association actually represents the majority of its employees and, hence, is the only agency which may represent plaintiff's match department employees in collective bargaining, and if that should happen, the Norris-LaGuardia Act would *900 require plaintiff to negotiate with the defendant unions as a prerequisite to injunctive relief, when, as stated above, the Wagner Act prohibits it from negotiating with them.
The writer has heretofore had occasion to consider the same question in the Grace Company Case, supra. The following conclusion was reached in that case: "Plaintiff insists that the Norris-LaGuardia Act [29 U.S.C.A. §§ 101-115] cannot be applicable under the circumstances presented in the case at bar because that act requires as one of its conditions precedent to injunctive relief, a resort on the part of the employer to all reasonable efforts to settle the dispute either by negotiation or with the aid of any available governmental machinery or voluntary arbitration (Section 108, [29 U.S.C.A.] supra), and that since in this case plaintiff's controversy is with parties who are concededly not the authorized representatives of the plaintiff's employees, to follow the requirement of the Norris-LaGuardia Act that it deal with these parties would compel plaintiff to violate the explicit terms of the Wagner Act [29 U.S.C.A. §§ 151-166]. To the extent that the Norris-LaGuardia Act requires negotiation or dealing with defendants in this case as a necessary prerequisite for an application for injunctive relief, plaintiff's position is correct. The expression of the Supreme Court to the effect that the Norris-LaGuardia Act could not apply in so far as its provisions conflicted with the rights conferred or obligations imposed by the Railway Labor Act [45 U.S. C.A. § 151 et seq.] is sufficient authority for the position stated." (Virginian Ry. Co. v. System Federation No. 40, 300 U.S. 515 [57 S.Ct. 592, 81 L.Ed. 789]). "The Norris-LaGuardia Act is general in its character and was passed prior to the enactment of the Wagner Act or the Railway Labor Act. At the time of its enactment the obligations imposed upon the employer with respect to dealing with the duly constituted representatives of the employees alone and as a unit had not been imposed. The later establishment of those obligations by the latter act operated to create an exception to the general provisions of the Norris-LaGuardia Act, with the result that employers by reason of the recently established obligation to deal with one entity and one alone, were necessarily not required to deal or negotiate with any other."
While plaintiff might not be, and I think would not be, required to negotiate with defendant unions should another agency be certified as the collective bargaining agent of plaintiff's employees, as a prerequisite to applying for injunctive relief, yet it does not follow that none of the provisions of the Norris-LaGuardia Act are applicable because one particular provision may possibly be inapplicable.
For the reasons stated above, the petition is dismissed.
In view of the fact that conditions may change or that facts may exist which were not shown, the dismissal of plaintiff's petition is without prejudice to its reinstatement should the facts and circumstances require and permit injunctive relief by this court.