### Lipoff v. United Food Workers Industrial Union, Local No. 107, et al.

*David Kanner,* for plaintiff.

*M. Herbert Syme,* for defendants.

FLOOD and LEVINTHAL, JJ., February 9, 1938.—Plaintiff has brought a bill in equity, alleging that he conducts a retail grocery and meat store at 1116 West Columbia Avenue, Philadelphia; that he has two employes with whom he does not now have and never has had any dispute; that defendant union and its agent and organizer have demanded that plaintiff agree to employ members of defendant association only, to which demand he has refused to accede; that the union has placed 15 pickets before plaintiff's store, which has a frontage of 15 feet; that as a result of the picketing, the entrance to plaintiff's premises is obstructed, and customers are intimidated and subjected to abusive language; that the pickets carry placards stating that the employer is unfair to organized labor; that defendants are financially irresponsible and the plaintiff suffers irreparable damage and is without an adequate remedy at law.

We are prayed to enjoin defendants, preliminarily, from combining and conspiring to injure or interfere with plaintiff's business, his employes and patrons, by assaults, threats, intimidation, injury, annoyance, and abusive language, and by congregating about plaintiff's place of business and the approaches thereto.

Defendant objects that it is beyond our power to grant the prayers of plaintiff's bill because of the limitations placed upon our jurisdiction by the Labor Anti-Injunction Act of June 2, 1937, P. L. 1198, 43 PS §206a, et seq. (Supp. 1937). Plaintiff's reply raises two very important questions which have not yet been passed upon by our Supreme Court.

First, is the Labor Anti-Injunction Act applicable to the facts before us?

Second, is the act constitutional?

1. Section 4 of the act deprives the courts of this Commonwealth of any power they may have had to issue an injunction in any cases included within the act except in strict conformity with its provisions, and in accordance with the public policy declared therein. The cases

included within the act, as shown by sections 6 to 17, inclusive, are all cases involving or growing out of labor disputes. Section 3 provides, inter alia, that for the purpose of the act:

"(a) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in a single industry, trade, craft or occupation, or have direct or indirect interests therein, or who are employes of the same employer, or who are members of the same or an affiliated organization of employers or employes, whether such dispute is (1) between one or more employers or associations of employers, and one or more employes or associations of employes; (2) between one or more employers or associations of employers, and one or more employers or associations of employers; or (3) between one or more employes or association of employes, and one or more employes or association of employes; or when the case involves any conflicting or competing interests in a 'labor dispute' (as hereinafter defined) of 'persons participating or interested' therein (as hereinafter defined).

"(b) A person or association shall be held to be a person participating or interested in a labor dispute if relief is sought against him or it, and if he or it is engaged in the same industry, craft or occupation in which such dispute occurs or has a direct or indirect interest therein, or is a member, officer or agent of any association composed in whole, or in part, of employers or employes engaged in such industry, trade, craft or occupation.

"(c) The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment or concerning employment relations or any other controversy arising out of the respective interests of employer and employe, regardless of whether or not the disputants stand in the proximate relation of employer and employe,

and regardless of whether or not the employes are on strike with the employer."

This controversy clearly concerns the association as well as the representation of persons in negotiating terms and conditions of employment. Defendant union is an association of employes engaged in the same trade as plaintiff, the retail grocery and meat business. Both parties have direct interests therein, the very existence of the union and the welfare of its members being intimately bound up with and dependent upon it. Subjects in controversy are conditions of employment and the representation of employes. And since, under the terms of the act, neither a strike nor the proximate relation of employe and employer is an indispensable element in a labor dispute, the controversy before us involves such a dispute.

This seems so clear that citation of authorities from other jurisdictions having similar or identical statutes would seem superfluous were it not that some courts have held otherwise: Lauf et al. v. E. G. Shinner & Co., Inc., 82 F.(2d) 68 (1936), rehearing denied, 90 F.(2d) 250 (C. C. A. 7th), certiorari granted, 58 Sup. Ct. Rep. 41 (1937) ; Mayo et al. v. Dean, 82 F.(2d) 554 (C. C. A. 5th, 1936) ; California State Brewers' Institute v. International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers, C. C. H. Labor Service, par. 18030 (W. D., Wash., 1937) ; Donnelly Garment Co. et al. v. International Ladies' Garment Workers' Union et al., 20 F. Supp. 767 (W. D., Mo.), affirmed, 5 U. S. Law Week 539 (1937) ; Culinary Workers' Union No. 331 et al. v. Fuller et al. (Court of Civil Appeals of Texas, 1937), 105 S. W. (2d) 295; Safeway Stores, Inc., v. Retail Clerks' Union, Local No. 148 et al., 184 Wash. 322, 51 P. (2d) 372 (1935). See also Gevas, etc., v. Greek Restaurant Workers' Club et al., 99 N. J. Eq. 770, 134 Atl. 309 (1926), Feller et al. v. Local 144, International Ladies Garment Workers Union et al., 121 N. J. Eq. 452, 191 Atl. 111 (1937), International Ticket Co. v. Wend-

rich et al., 122 N. J. Eq. 222, 193 Atl. 808 (1937), Oberman & Co., Inc., v. United Garment Workers of America et al., 21 F. Supp. 20 (W. D., Mo., 1937), Jensen et al. v. St. Paul Moving Picture Machine Operators, etc., et al., 194 Minn. 58, 259 N. W. 811 (1935), Thompson v. Boekhout et al., 273 N. Y. 390, 7 N. E. (2d) 674 (1937). For a comprehensive and recent discussion of the question in the absence of anti-injunction legislation, see Keith Theatre, Inc., v. Vachon et al., 134 Me. 392, 187 Atl. 692 (1936).

We cannot see how the plain language of this act can be so interpreted as it is in some of the above-mentioned cases. Those cases appear to us to modify rather than to expound the meaning of the act. In the absence of any decision which is binding upon us, we have no hesitancy in rejecting the authority of the cases last noted and aligning ourselves with those courts who have construed acts identical or substantially identical with that before us to mean what we think it plainly says: Cinderella Theater Co., Inc., et al. v. Sign Writers' Local Union No. 591 et al., 6 F. Supp. 164 (E. D., Mich., 1934); Miller Parlor Furniture Co., Inc., v. Furniture Workers Industrial Union, 8 F. Supp. 209 (D., N. J., 1934); Washington Shoe Workers' Union et al. v. United Shoe Workers of America et al., C. C. H. Labor Service, par. 18046 (D., D. C., 1937); Cupples Co. v. American Federation of Labor et al., 20 F. Supp. 894 (D., Mo., 1937); S. S. Kresge Co. v. Amsler et al., C. C. H. Labor Service, par. 18004 (E. D., Mo., 1937); Coryell & Son v. Petroleum Workers' Union, C. C. H. Labor Service, par 3563.06 (Minn., 1936); People ex rel. v. Sheriff of Kings County et al., 164 Misc. 355 (N. Y., 1937); Geo. B. Wallace Co. et al. v. International Association of Mechanics, etc., et al., 155 Ore. 652, 63 P. (2d) 1090 (1936); American Furniture Co. v. I. B. of T. C. & H. of A., etc., et al., 222 Wis. 338, 268 N. W. 250 (1936); Senn v. Tile Layers Protective Union, Local No. 5 et al., 222 Wis. 383, 268 N. W. 270, 872 (1936), affirmed, 301 U. S. 468 (1937).

See also Levering & Garrigues Co. et al. v. Morrin et al., 71 F. (2d) 284 (C. C. A., 2d), certiorari denied, 293 U. S. 595 (1934), Starr v. Laundry & Dry Cleaning Workers' Local Union No. 101 et al., 155 Ore. 634, 63 P. (2d) 1104 (1936), and Blanchard et al. v. Golden Age Brewing Co. et al., 188 Wash. 396, 63 P. (2d) 397 (1936). This view has been followed even without a statute: Exchange Bakery & Restaurant, Inc., v. Rifkin, etc., et al., 245 N. Y. 260, 157 N. E. 130 (1927). Compare also Kirmse v. Adler et al., 311 Pa. 78 (1933), which appears to modify much that was said in the earlier cases of Erdman v. Mitchell, 207 Pa. 79 (1903), and Purvis v. Local No. 500, United Brotherhood, etc., et al., 214 Pa. 348 (1906). And see 84 U. of Pa. L. R. 771, 772, 1027, 85 U. of Pa. L. R. 224 (1936), 36 Col. L. R. 157, and 50 Harv. L. R. 1295 (1937). In this view, the facts alleged in plaintiff's bill in the instant case constitute a labor dispute.

Plaintiff contends that this interpretation of the act conflicts with the policy and provisions of the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, 43 PS §211.1, et seq. (Supp. 1937). Even if this be so, the provisions of the later act, the Labor Anti-Injunction Act, being clear and unambiguous, must prevail over the general statement of policy in the earlier one, although they were enacted by the same legislature. See the Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 65, 46 PS §565 (Supp. 1937).

Furthermore, we do not agree that the policy of the Pennsylvania Labor Relations Act precludes this interpretation. All that we here decide is that because of the express provision of the Labor Anti-Injunction Act, the conduct of defendants cannot be enjoined. We are not called upon in this connection to decide whether the act we are passing upon makes that conduct legal, or leaves plaintiff entirely remediless with regard to it. See 84 U. of Pa. L. R. 1028, n. 9 (1936).

2. Since the act controls this case, we have no power to grant an injunction, except in strict conformity with its provisions (section 4). Section 9 provides that no court shall issue an injunction "except after findings of fact by the court to the effect. . . .

"(f) That the public officers charged with the duty to protect complainant's property are unable to furnish adequate protection."

The bill does not allege that the public officers are unable to furnish adequate protection. Unless or until the bill is amended, no evidence could be introduced to support the finding which section 9(f) makes prerequisite to the grant of an injunction by us: Knapp-Monarch Co. v. Anderson et al., 7 F. Supp. 332 (E. D., Ill., 1934); Heintz Mfg. Co. v. Local No. 515 of United Automobile Workers et al., 20 F. Supp. 116 (E. D., Pa. 1937); Cupples Co. v. American Federation of Labor et al., supra. See also Cole et al. v. Atlanta Terminal Co. et al., 15 F. Supp. 131 (N. D., Ga., 1936), and Laclede Steel Co. et al. v. Newton et al. 80 F.(2d) 636 (C. C. A., 7th, 1935).

Further, although no finding is required expressly, we cannot grant injunctive relief to a complainant "who has failed to make every reasonable effort to settle such dispute, either by negotiation, or with the aid of any available governmental machinery": section 11, Labor Anti-Injunction Act; Grace Co. v. Williams et al., 20 F. Supp. 263 (W. D., Mo., 1937); Cinderella Theater Co., Inc., et al. v. Sign Writers' Local Union No. 591 et al., supra; Stanley et al. v. Peabody Coal Co. et al., 5 F. Supp. 612 (S. D., Ill., 1933). Whether freedom from such failure must be shown by complainant and so must be alleged, or whether the burden rests with defendant as a matter of defense is not clear, but it is immaterial here, because of the deficiency of the bill under section 9(f) of the act.

Finally, we have before us no bill of particulars "specifying in detail the time, place, and the nature of the acts complained of, and the names of the persons alleged

to have committed the same or participated therein" (section 9), although paragraphs 8, 9, 10, and 11 of the complaint would perhaps be sufficient substitute for all details except the names.

3. Does the statute, as construed in this case, deprive us of any inherent equity jurisdiction in violation of the Constitution of Pennsylvania? To ask this question is to answer it. Our courts possess no such inherent power.

The Constitution of Pennsylvania provides in article V, sec. 20:

"The several courts of common pleas, besides the powers herein conferred, shall have and exercise within their respective districts, subject to such changes as may be made by law, such chancery powers as are now vested by law in the several courts of common pleas of this Commonwealth, or as may hereafter be conferred upon them by law."

In Penn Anthracite Mining Co. v. Anthracite Miners of Pa. et al., 318 Pa. 401 (1935), a case involving the deprivation of our power to summarily punish for contempt arising out of the violation of labor injunctions, Mr. Justice Linn wrote at pages 410-12:

"The development of equity jurisprudence in this State, therefore, clearly supports the view that section 20 recognized a reservation of power in the legislature to add to, take from, or otherwise change the chancery powers then, or thereafter, vested in the common pleas, as well as the administration of those chancery powers. . . . While the legislature may not abolish the common pleas, it may abolish or change any or all chancery powers conferred on those courts."

4. Does the statute, as applied by us, violate the fourteenth amendment to the Constitution of the United States and the similar guaranties embodied in the Declaration of Rights of the Constitution of Pennsylvania?

The only decision of the United States Supreme Court on the subject would make it appear that it does. Truax

v. Corrigan et al., 257 U. S. 312 (1921), held unconstitutional as a violation of the equal protection clause of the fourteenth amendment an Arizona statute which had been construed to forbid injunctions to restrain violence, libel, intimidation, and abusive language in labor disputes. Mr. Chief Justice Taft wrote that it was undue discrimination to deny equitable relief there when it would have been granted had another group—competing restaurateurs, for example—engaged in the same unlawful activities as defendant. As the capstone of his argument, the Chief Justice said at page 339:

"It is really a little difficult to say, if such classification can be sustained, why special legislative treatment of assaults upon an employer or his employees by ex-employees may not be sustained with equal reason. It is said the State may deal separately with such disputes because such controversies are a frequent and characteristic outgrowth of disputes over terms and conditions of employment. Violence of ex-employees toward present employees is also a characteristic of such disputes. Would this justify a legislature in excepting ex-employees from criminal prosecution for such assaults and leaving the assaulted persons to suits for damages at common law?"

It would not be profitable to attempt to distinguish the Truax case from the one at hand. The facts are similar. The statutes differ in only one respect. We may enjoin if the police officials are proved unable to protect plaintiff's property. In the Truax case, the Supreme Court thought the chancellor entirely powerless. Subsequent decisions like Senn v. Tile Layers Protective Union, Local No. 5 et al., supra, and the cases applying the Clayton Act of October 15, 1914, 38 Stat. at L. 730, such as American Steel Foundries v. Tri-City Central Trades Council et al., 257 U. S. 184 (1921), have not materially modified the Truax case nor have they been inconsistent with it, for they involved only peaceful picketing. Mr. Justice Brandeis was careful to point out distinctions between the Truax and Senn decisions. See 301 U. S. 479-80. It seems

that the courts, which have refused to enjoin conduct comparable to that charged in this bill under statutes similar to ours, have ignored or failed adequately to consider the Truax decision. In short, that case cannot be explained away, and it is determinative here unless we are not bound to follow it.

As we said recently, judicial precedence normally requires us to follow the decisions of our appellate courts and of the United States Supreme Court in Federal questions: Commonwealth ex rel. v. Green et al., 30 D. & C. 350. But in constitutional law, the rule of stare decisis must be regarded as part of a law of growth and development, and not as "the axioms and corollaries of a book of mathematics": Holmes on Common Law, p. 1 (1881).

Of many illustrations of this principle in the decisions of the Supreme Court of the United States might be pointed out West Coast Hotel Co. v. Parrish et al., 300 U. S. 379 (1937), overruling Adkins et al., etc., v. Children's Hospital, etc., 261 U. S. 525 (1923), National Labor Relations Board v. Friedman-Harry Marks Clothing Co., 301 U. S. 58, National Labor Relations Board v. Fruehauf Trailer Co., 301 U. S. 49, National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U. S. 1 (1937), and Nebbia v. New York, 291 U. S. 502 (1934), which in effect overruled entire lines of cases. In the Hotel Company case it was the State Supreme Court which first refused to recognize the present validity of the Adkins decision (Parrish et al. v. West Coast Hotel Co., 185 Wash. 581, 55 P. (2d) 1083 (1936), and the Supreme Court of the United States affirmed its action.

To borrow the words of Mr. Justice Cardozo in The Nature of the Judicial Process, pp. 163, 164 (1921), while most precedents are "static", seldom to be ignored or changed by the court which made them, and never by lower courts, yet some are "dynamic". Cf. Salmond on Jurisprudence, chap. 8 (Manning's 8th ed., 1930). In the latter category are to be found constitutional decisions having to do with social and economic matters. In fine,

there are limits beyond which precedent does not bind us in such questions, when intervening dicta of the appellate courts or supervening circumstances indicate that those courts would not hold today as they did before.

A very interesting recent discussion of this question by our Supreme Court is found in Commonwealth ex rel. v. Lawrence et al., 326 Pa. 526, 530, 531 (1937), where Chief Justice Kephart, for the court, quoted approvingly from I Cooley, Constitutional Limitations, p. 121 notes (8th ed., 1927), as follows:

" '. . . when a question involving important public or private rights, extending through all coming time, has been passed upon on a single occasion, and which decision can in no just sense be said to have been acquiesced in, it is not only the right, but the duty, of the court, when properly called upon, to reëxamine the questions involved, and again subject them to judicial scrutiny. We are by no means unmindful of the salutary tendency of the rule *stare decisis*, but at the same time we cannot be unmindful of the lessons furnished by our own consciousness, as well as by judicial history, of the liability to error and the advantages of review.' "

Distinctions have been drawn between labor and other groups in the community frequently, in a variety of ways, and over a long period, and the constitutionality of such legislation is no longer open to question. The labor of a woman may be bought and sold only for certain prices and during certain hours, although there can be no limitation on the amount she charges for much of her goods or the time at which she sells them: West Coast Hotel Co. v. Parrish et al., supra; Muller v. The State of Oregon, 208 U. S. 412 (1908) ; Bunting v. Oregon, 243 U. S. 426 (1917) ; Williams, etc., et al. v. Standard Oil Company of Louisiana, 278 U. S. 235 (1929), with which compare Nebbia v. New York, supra, Olds v. Klotz et al., 131 Ohio St. 447, 3 N. E. (2d) 371, and Skaggs, etc., et al. v. City of Oakland, 6 Cal. (2d) 222, 57 P. (2d) 478, 85 U. of Pa.

L. R. 113 (1936). An employer must arbitrate with his employes, although he may cease to transact ordinary business with others for any reason he may think fit. See the National Labor Relations Board cases, supra. Workmen's compensation with liability regardless of fault and unemployment insurance which excludes executives and other groups are other statutory classifications based upon the popularly recognized desirability of treating labor as a special class for various legislative purposes: Second Employers' Liability Cases, 223 U. S. 1 (1912); Arizona Employers' Liability Cases, 250 U. S. 400 (1919); Carmichael, etc., et al. v. Southern Coal & Coke Co., 301 U. S. 495 (1937).

Labor may by combination raise its prices and wages, but it is criminal for vendors of a commodity, sugar, for example, to combine to raise prices: Act of August 17, 1937, 50 Stat. at L. 693, 15 U. S. C. §1 (Supp. 1937). See Sugar Institute, Inc., et al. v. United States, 297 U. S. 553 (1936). It is criminal and tortious to combine to induce the breach of an ordinary contract, but in New York, labor has been accorded even that right: Stillwell Theatre, Inc., v. Kaplan, etc., 259 N. Y. 405, 182 N. E. 63 (1932). See 84 A. L. R. 54 (1933). Indeed, although labor, like anything else bought and sold, may be regarded economically as a commodity, yet by statute it may no longer be so termed in a legal sense, and many of the attributes of a commodity have been stripped from it. See e. g., Clayton Act, supra, and the cases cited supra. The ancient cry of its spokesmen that labor is not a commodity now so nearly approaches the truth that in law, at least, it can no longer be so considered, or at least can no longer be generally classified with other commodities. See, regarding the propriety of distinction between labor and the remainder of the community, the comprehensive discussion in the dissenting opinions of Mr. Justice Brandeis, Mr. Justice Pitney, and Mr. Justice Holmes in Truax et al., etc., v. Corrigan et al., supra.

When actions which would be criminal in other circumstances are lawful in labor cases, and the rights violated by such actions have been deprived of all sanctions in labor disputes without violating the Constitution, it seems difficult to understand why other rights, such as those here involved, may not be deprived of only one of their sanctions in a labor dispute, leaving other remedies inviolate.

It must be remembered that the rights here sought to be protected by injunction are guarded by other remedies. Thus we are not confronted with the situation discussed by the Supreme Court in the Truax case at pages 328-30, where all remedies were regarded as taken from plaintiffs.

A suit against the wrongdoers for damages may be inadequate under the facts alleged. It is, however, of real assistance. Consider the effect, for example, of the decisions in Loewe v. Lawlor, 208 U. S. 274 (1908), 235 U. S. 522 (1915).

Some of the acts charged constitute crimes. And it is altogether unlikely that acts of violence, or acts tending toward a breach of the peace, will be deprived of their criminal character within the foreseeable future. The fears of Mr. Chief Justice Taft that labor may be exempted from criminal statutes are not likely to be realized in the case of crimes of violence and breaches of the peace. Certainly, such fears are not of sufficient substance to intrude upon the decision of cases such as the one before us.

If it be said that criminal sanctions are not effective in restoring lost business, it must be remembered that normally equity will not enjoin crimes: Ashinsky v. Levenson, 256 Pa. 14 (1917). See also Mahon et al. v. Pennsylvania Coal Co., 274 Pa. 489 (1922). Their victim is left to his action at law after the event. An exception has been made in the case of certain continuing trespasses. We see no offense to the Constitution in cutting away part of this exception in the case of labor disputes and bringing them under the general rule.

But the most effective sanction against breaches of the peace such as those here alleged is the police power. It is the duty of the police of the city to prevent them and to end them when they are in progress. This is much more effective for immediate relief against violence than injunctions can be.

We have been deprived of the power to punish summarily for contempt in such cases: Act of June 23, 1931, P. L. 925, 17 PS §2047 (Supp. 1937); Penn Anthracite Mining Co. v. Anthracite Miners of Pa. et al., supra. It is difficult to see under these circumstances what would be added by an injunction to the protection already afforded, unless the police are unwilling or unable to enforce the law. As has been pointed out, the latter fact has not here been alleged, in spite of the express requirement of the statute.

Again, we cannot overlook the fact that since the Truax case, not only Congress (Act of March 23, 1932, 47 Stat. at L. 70, 29 U. S. C. A. secs. 101-15), but the legislatures of more than a score of states, including our own and leading industrial jurisdictions such as New York, Massachusetts, and Illinois, have passed similar legislation. See C. C. H. Labor Service, par. 8001; 106 A. L. R. 361 (1937). All of this legislation would be invalid were the Truax case still to be considered the law. This legislative interpretation of the Constitution by the law-making bodies of more than half the number of States necessary to amend the Constitution should not be disregarded. In the face of this almost overwhelming affirmation of the reasonableness and desirability of such a statute, it would be presumptuous of us to declare it a violation of the fourteenth amendment on the ground that it is unreasonable, unless the decision of the Supreme Court in the Truax case compels us to do so. For the reasons which we have set out above, we do not believe that we are under any such compulsion.

We, of course, agree that the violence charged in this bill would, if proved, be illegal. If such violence has ac-

companied the labor dispute in this case, it is unjustifiable, and should be ended immediately. But plaintiff has mistaken his remedy. Protection by injunction is no longer open to him in Pennsylvania unless he can both allege and prove that his ordinary protection—that of the police force—is unavailable. This he has failed to do. Therefore, we refuse his application for a preliminary injunction.

We cannot reiterate too strongly that many of the acts charged in the bill are illegal. We have just recently, while refusing to enjoin peaceful picketing in a different sort of case, laid down in our decree some rules that should be observed in such matters: Individual Retail Food Store Owners Assn. v. Penn Treaty Food Stores Assn. et al., 33 D. & C. 100. There, as here, small businesses being done by individuals in small stores were involved. In our opinion, defendants here should conform to similar standards of conduct, and we strongly urge them to do so. Lawlessness on their part may bring upon them eventual legal condemnation much heavier for being delayed. Failure to observe the rules of fairness may bring even heavier punishment at the bar of public opinion.

It is, of course, to be understood that we have not dismissed plaintiff's bill. No preliminary objections have been filed, and defendant's demurrer has no place in our equity practice: Pennsylvania Equity Rules 15, 48. We have merely refused plaintiff's application for a preliminary injunction, because proof of all the averments of his bill would not make out a case for an injunction. We express no opinion as to whether he may, upon application, so amend his bill as to state a case which, upon sufficient proofs at a final hearing, would warrant the issuance of a permanent injunction.