**LAUF et al. v. E. G. SHINNER & CO., Inc.**

No. 5551.

Circuit Court of Appeals, Seventh Circuit.

Feb. 29, 1936.

Joseph A. Padway, of Milwaukee, Wis., for appellants.

W. L. Gold, Ray T. McCann, and W. G. Sullivan, all of Milwaukee, Wis., for appellee.

Before EVANS and SPARKS, Circuit Judges, and WOODWARD, District Judge.

SPARKS, Circuit Judge.

This is an appeal from an interlocutory order of the District Court enjoining appellants from picketing appellee's markets in Milwaukee, Wisconsin. The order further enjoined appellants from seeking to coerce appellee to discharge its employees because they did not choose to join the appellant organization, or to coerce appellee to compel its employees to become members of that organization, or to accept it as their bargaining agent and representative. The order also enjoined appellants from advertising, stating or pretending that appellee was unfair to appellants or organized labor generally, and from annoying, molesting, persuading or soliciting any customers or prospective customers of appellee to cease patronizing appellee's meat markets.

This order was based upon findings of fact and conclusions of law which are set forth in the margin.[1] A bond to secure costs and damages was given by appellee and approved by the court, whereupon the writ was issued and served upon appellants.

---

[1] Findings of Fact.

"1. Complainant is a corporation duly organized and existing under and pursuant to the laws of the state of Delaware and located and having its office and principal place of business in the city of Wilmington in said state of Delaware, and a citizen and resident of said state, and at the time of the commencement of this action was and now is the owner and operator of five meat markets in the city of Milwaukee, Wisconsin * * *

"2. That the matter in controversy in this cause exceeds, exclusive of interest and costs the sum, and exceeds the value, of $3,000.

"3. The defendant, Edward Lauf, is a citizen and resident of the city of Milwaukee, state of Wisconsin, and is the business manager of the defendant, Amalgamated Meat Cutters and Butcher Workmen of North America, Local Number 73, which latter defendant is an unincorporated labor union, and a citizen and resident of the state of Wisconsin.

"4. Complainant has in its employ in Milwaukee, Wisconsin, 35 persons, who are employed in the business of conducting the aforementioned meat markets and that none of said employees were, at the time of the commencement of this suit, members of the defendant * * * (the union)

"5. The defendants, Edward Lauf and * * * (the union) have made demand upon complainant that it require its said employees, as a condition of their continued employment by complainant, to become members of such defendant labor union * * * That the complainant has notified its employees that they were free to join said union if they so desired, and complainant is now ready and willing to permit them to so join, but that said employees have declined and refused to join said labor union; that said defendant labor union was not the union chosen by any of the said employees of the complainant to represent them in any respect with the complainant.

"6. For the purpose of coercing the complainant to require its employees to join and become members of said defendant labor union, and accept it as their bargaining agent and representative, as a condition of their continued employment, and for the purpose of injuring and destroying the business of the complainant

No strike or dispute between employer and employee is here involved. The primary question presented is whether a labor union representing not one of the employees of a business, can lawfully picket that business and thus injure it, for the purpose of compelling the employer to accept the union as the sole bargaining agent of the employer's workmen over their protest and to the exclusion of the agency which the employees in the exercise of their free choice have unanimously selected.

Appellants claim the District Court had no jurisdiction to enter the order because forbidden by the terms of the Norris-La Guardia Act (29 U.S.C.A. §§ 101–115) and the Wisconsin Labor Code (St.Wis.1933, § 268.18 et seq.), while appellee claims that those acts are not operative in this case because no labor dispute exists, and that moreover, under the provisions as to public policy declared in section 2 of the Norris-La Guardia Act (29 U.S.C.A. § 102) and a corresponding section of the Wisconsin Code, it was necessary for the court to protect the rights of appellee's employees by injunctive process. In order for us to answer the question it becomes necessary for us to examine both enactments.

Section 101 of the federal enactment provides that "no court of the United States * * * shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter."

Section 102 declares that public policy to be as follows:

"Whereas under prevailing economic conditions, developed with the aid of governmental authority for owners of property to organize in the corporate and other forms of ownership association, the individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect·his freedom of labor, and thereby to obtain acceptable terms and conditions of employment, wherefore, *though he should be free to decline to associate with his fellows, it is necessary that he have full freedom of association,* self-organization, *and designation of representatives of his own choosing,* to negotiate the terms and conditions of his employment, and that he shall be *free from the interference, restraint, or coercion of employers* of labor, or their agents, *in the designation of such representatives* or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." (Our italics.)

Section 104 enumerates certain specific acts, the doing of which are not subject to restraining orders or injunctions in any case involving or growing out of any labor dispute. Among these are:

"(e) Giving publicity to the existence of, or the facts involved in, any labor dis-

---

at said meat markets, in the event complainant refused to yield to such coercion, the defendants have conspired and concerted between them to cause, and have, commencing on April 6, 1935 and continuously thereafter, caused false and misleading signs, placards and banners to be placed before the said meat markets of the complainant and have caused persons, none of whom are employees of the complainant, to parade and picket before the said meat markets of the complainant, and have falsely accused the complainant of being unfair to organized labor in its dealings with its said employees, and that all of the defendants have prevented patrons and prospective patrons of the complainant from patronizing its said meat markets by molestation, annoyance, threats and intimidation.

"7. That complainant has suffered, and will suffer, irreparable injury from the continuance of the practices of the defendants, and that the customers and prospective customers of the complain-

ant are and will be restrained and intimidated from patronizing said complainant, by reason of the acts of the said defendants.

"8. There is in existence no labor dispute between complainant and defendants, or any or either of them.

"9. That complainant has no adequate remedy at law, and I find as

"Conclusions of Law.

"1. That complainant is bound under the terms of 29 U.S.C.A. § 102, as well as sections 268.18 and 268.19, Wis. Stats. of 1933, to permit its employees free agency in the matter of the choice of labor union or organization to act as their representatives.

"2. Complainant is entitled to writ of injunction pendente lite of this court restraining and enjoining the defendants, and each of them, as well as their officers, agents, employees, associates and confederates from doing the acts complained of herein."

pute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence; (f) Assembling peaceably to act or to organize to act in promotion of their interests in a labor dispute; * * * (i) Advising, urging, or otherwise causing or inducing without fraud or violence the acts heretofore specified, regardless of any such undertaking or promise as is described in section 103 of this chapter."

Section 107 provides that no federal court shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute except after findings of fact by the court to the effect:

"(a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained; * * * (b) That substantial and irreparable injury to complainant's property will follow; (c) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief; (d) That complainant has no adequate remedy at law; and (e) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection * * *"

Section 108 provides that:

"No restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration."

Section 109 provides that:

"No restraining order or temporary or permanent injunction shall be granted in a case involving or growing out of a labor dispute, except on the basis of findings of fact made and filed by the court; * * * and every [such] restraining order or injunction * * * shall include only a prohibition of such specific act or acts as may be expressly complained of * * * and * * * included in said findings of fact * * *"

Section 113 defines the terms and words used in the chapter:

"(a) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees; whether such dispute is (1) between one or more employers or associations of employers and one or more employees or associations of employees; (2) between one or more employers or associations of employers and one or more employers or associations of employers; or (3) between one or more employees or associations of employees and one or more employees or associations of employees; or when the case involves any conflicting or competing interests in a 'labor dispute' * * * of 'persons participating or interested' therein * * *

"(b) A person or association shall be held to be a person participating or interested in a labor dispute if relief is sought against him or it, and if he or it is engaged in the same industry, trade, craft, or occupation in which such dispute occurs, or has a direct or indirect interest therein, or is a member, officer, or agent of any association composed in whole or in part of employers or employees engaged in such industry, trade, craft, or occupation.

"(c) The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee."

The pertinent provisions of the Wisconsin Labor Code (St.Wis.1933, § 268.18 et seq.) are not materially different from the provisions of the Norris-La Guardia Act. In substantially the same manner they seek to carry out the declared public policy of that State with respect to employees. That policy is substantially the same as the national policy and states that an employee shall have "full freedom of association, self-organization, and designation of representatives of his own choosing, * * * and that he shall be free from the interference, restraint or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted

activities for the purpose of collective bargaining or other mutual aid or protection." Section 268.18, Wis.Stats.1933.

Both the federal and state enactments are applicable only to cases involving or growing out of labor disputes, and the first question urged· here is whether the facts presented constitute such a case. Appellants contend for an affirmative answer and appellee urges a negative answer.

■ Under the authority of United Electric Coal Companies v. Rice et al., 80 F. (2d) 1, decided by this court at its present term, the question must be answered in the negative. We there held that the labor dispute designated in the Norris-La Guardia Act referred to a labor dispute between the employer and the employee and did not apply to disputes between employees or to disputes between employee unions to which the employer was not a real party. There the dispute was between the regular union which was the United Mine Workers of America, and a recently organized union which styled itself the Progressive Miners of America. Members of both unions were employees of the employer, and all, or practically all, of the employees were members of the United when the Progressive was organized. The dispute was of such magnitude that it was beyond control of the unions or the local officers. The employer was in no manner involved, except that it was suffering enormous damage without fault on its part. Both unions were satisfied with wages, hours, and conditions, and the strike was called merely because the employer would not cancel its contract with the United, and enter into a like contract with the Progressives. Under those circumstances the court enjoined the Progressives, and protected the sanctity of the contract and held that there was no labor dispute in which the employer was engaged or for which it was in any manner responsible.

In the case at bar, the facts are quite analogous to those in the United Electric Case. In each case the real controversy was between the two unions, and the innocent employer suffered the damage. The instant case, however, is stronger for the employer in that not one of appellee's employees is a member of the appellant union. Indeed, neither the employer nor any of his employees are engaged or involved in a labor dispute with anyone. The controversy, rather, seems to be a unilateral one with the sole object of coercing appellee to compel its employees to join the appellant union, in order that it may represent the employees in their dealings with the employer. Appellants seek to accomplish that result by picketing and damaging the employer's business. But, under the Norris-La Guardia Act and the Wisconsin Labor Code, it would amount to a violation of both the federal and state law if appellee complied with appellants' demands, for under those laws the employer is specifically enjoined from influencing his employees in their choice of a union or their representative. The employees have refused to join the appellant union, they have organized their own union and have selected their own representative without interference or participation of their employer, and their rights in these respects are as fully protected by the laws as are those of appellants.

■ The declared public policy of both the nation and State of Wisconsin establishes the substantive rights of appellee's employees which the courts will protect by injunction, though no specific provision therefor he contained in either Act. Texas & N. O. R. Co. v. Brotherhood of Ry. & S. S. Clerks, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034; Trustees of Wisconsin State Fed. of Labor v. Simplex Shoe Mfg. Co., 215 Wis. 623, 256 N.W. 56. It being unlawful for appellee to dictate to its employees what organization they should join, or what representative they should select, and likewise unlawful to refuse to recognize the agency which they had selected, and recognize another representative which they had rejected, it follows that appellants' demand upon appellee was unlawful.

In Truax v. Corrigan, 257 U.S. 312, 42 S.Ct. 124, 127, 66 L.Ed. 254, 27 A.L.R. 375, the Court said:

"Plaintiffs' business is a property right * * * and free access for employees, owner, and customers to his place of business is incident to such right. Intentional injury caused to either right or both by a conspiracy is a tort. Concert of action is a conspiracy, if its object is unlawful or if the means used are unlawful."

Hence it was held that picketing to accomplish a purpose which was unlawful was a tort which would be enjoined. True, that opinion was by a divided court, but there was no disagreement over the following statement which appears in one of the dissenting opinions:

"The employer has, of course, a legal right to carry on his business for profit, and incidentally the subsidiary rights to secure and retain customers. * * * This right to carry on business—be it called liberty or property—has value, and he who interferes with the right without cause renders himself liable."

The sum of appellants' contentions is that under the broad terms of the acts in question, appellants have a right to attain their ends by picketing at any time or place. The statutes are not fairly subject to any such construction. As stated in Truax v. Corrigan, supra, there must be a cause for such interference with business. Here there was no semblance of such cause, for there was no labor dispute between appellants and appellee because the relationship of employer and employees and their associates did not exist. United Electric Coal Companies v. Rice et al., supra.

As supporting a contrary doctrine, appellants rely upon American Steel Foundries v. Tri-City Central Trades Council, 257 U.S. 184, 42 S.Ct. 72, 78, 66 L.Ed. 189, 27 A.L.R. 360. In speaking of the union's rights and interests, the Court said:

"Employees must make their combination extend beyond one shop * * * because in the competition between employers they are bound to be affected by the standard of wages of their trade in the neighborhood. Therefore, they may use all lawful propaganda to enlarge their membership."

In the case before us, the union's right to increase its membership is not questioned, even to the point of including appellee's employees if it can do so. The Court in the Tri-City Case referred to the case of Lucke v. Clothing Cutters' & Trimmers' Assembly, 77 Md. 396, 26 A. 505, 19 L.R.A. 408, 39 Am.St.Rep. 421, which held " * * * that the state law authorizing formation of Trade Unions * * * was not a warrant for making war upon the nonunion man or for illegal interference with his rights and privileges." We can not think that either Congress or the Wisconsin Legislature intended to increase the union's rights in this respect.

· Appellants also rely upon Levering & Garrigues Co. v. Morrin (C.C.A.) 71 F. (2d) 284; Cinderella Theater Co. v. Sign Writers' Local Union (D.C.) 6 F.Supp. 164, and Miller Parlor Furniture Co. v. Furniture Workers' Industrial Union (D. C.) 8 F.Supp. 209. In the first two of these cases the facts are not closely analogous to the facts before us, and in the third case there seems to have been no expressed consideration of the public policy as defined in the Norris-La Guardia Act. For these reasons we do not feel justified in following the conclusions there reached in the respects mentioned. Other similar cases have been called to our attention but we think they do not give proper heed to the declared public policy by which we must be controlled.

■ It is contended by appellants that the District Court was without jurisdiction to issue injunctive relief without making and filing findings that unlawful acts had been committed and would be continued unless restrained; that as to each item of relief greater injury would be inflicted upon complainant by the denial of relief, than would be inflicted upon the defendants by granting it; and that the public officers charged with the duty to protect complainant's property were unable or unwilling to furnish adequate protection. It is conceded that the statutes relied upon by appellants require such findings. But since we hold no labor dispute is here involved, those statutes can have no application here. Findings of fact were made by the court and they were supported by substantial evidence. Under amended Equity Rule 70½ (28 U.S.C.A. following section 723) promulgated November 25, 1935, findings of fact must be made in granting or refusing interlocutory injunctions. Prior to that date we had thought that the original rule 70½ made the same requirement, but as to this there was considerable difference of opinion among courts and lawyers. If the original rule did not make such requirement then it was not necessary for the court in this case to find the facts specially, because the injunction was granted before the amendment was made. However, the court precautiously made and filed findings of facts and we think they support the conclusions of law.

■ It is next contended by appellants that the injunction should have been denied for failure of appellee to prove that it had made every reasonable effort to settle the labor dispute. This contention likewise is not sound because there was no labor dispute within the meaning of the statutes.

■ Appellants further contend that appellee at the time it asked for and was granted relief was guilty of inequitable conduct in that it had not complied with the National

Industrial Recovery Act (48 Stat. 195). There is no merit in this contention. A. L. A. Schechter Poultry Corp. et al. v. U. S., 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947. Further inequitable conduct is alleged in that appellee was fostering a company union in contravention of the declared public policy of the United States and of Wisconsin. There is nothing in either enactment to support this contention.

Further complaint is made of the scope of the decree but we think this position is not tenable under the facts alleged, proven and found.

Decree affirmed.