[L. A. No. 18653. In Bank. Jan. 31, 1946.]

PARK & TILFORD IMPORT CORPORATION (a Corporation), Respondent, v. INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, LOCAL NO. 848, A. F. of L. et al., Appellants.

V. P. Lucas, David Sokol and Joseph A. Padway for Appellants.

Clarence E. Todd as Amicus Curiae, on behalf of Appellants.

O'Melveny & Myers, Louis W. Myers, Pierce Works, W. B.

Carman, Jr., Homer I. Mitchell and Jackson W. Chance for Respondent.

TRAYNOR, J.—Plaintiff, a New York corporation engaged in the manufacture, importation and sale of alcoholic beverages, maintains its local and western division offices in Los Angeles. All of its merchandise in California is brought into the state. Four per cent of the goods from its local warehouse is sold and shipped to other states and the rest is sold to customers in California. It is admittedly engaged in interstate commerce within the meaning of the National Labor Relations Act. (*National Labor Relations Board* v. *Jones & Laughlin Steel Corp.*, 301 U.S. 1, 32 [57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352]; *Lyons* v. *Eagle-Picher Lead Co.*, 90 F.2d 321.) Its California employees include a division manager, secretary, bookkeeper, warehouse superintendent, fifteen salesmen, four office clerks and two teamster-warehousemen.

In January, 1941, plaintiff's salesmen formed a union called the Park & Tilford Salesmen's Association. In the same year, one teamster joined defendant Local 848; the other joined defendant Local 595. In January, 1942, representatives of Local 595, with plaintiff's permission, interviewed the office clerks and asked them to join the union. They refused. Toward the end of February, 1942, representatives of Local 595 requested plaintiff to sign a closed shop contract covering the clerks. When plaintiff refused, the union threatened to call the teamsters out on strike, establish a picket line, and boycott plaintiff unless it signed the contract. Plaintiff again refused and in March, 1942, Local 848 was asked by Local 595 to organize the salesmen. With plaintiff's permission Local 848 interviewed the salesmen, but they refused to join. Local 848 then submitted a closed shop contract to plaintiff, which it refused to sign upon the ground that to do so would be an unfair labor practice under the National Labor Relations Act, since the union did not represent the salesmen. On March 20, 1942, the Park & Tilford Salesmen's Association admitted the office clerks and changed its name to Park & Tilford Mutual Association. Additional requests by the unions failed to induce plaintiff to sign the contracts, and the unions called the teamsters out on strike and began to picket plaintiff's place of business. A boycott was instituted June 14, 1942. The Los Angeles Food and Drug Council published plaintiff's name and business in its "Unfair List" and defendant notified many of plaintiff's customers verbally and by circular

letter that plaintiff was "unfair" and requested them not to purchase plaintiff's products.

On September 1, 1942, plaintiff filed a petition with the National Labor Relations Board for the certification of a bargaining agent for its employees, and on September 2, 1942, brought an action in the superior court for an injunction. On September 3, 1942, Local 595 filed charges with the National Labor Relations Board that plaintiff was guilty of an unfair labor practice, namely, the domination of the Park & Tilford Mutual Association. The Regional Director refused to issue a complaint that plaintiff was guilty of an unfair labor practice, and his action was sustained by the board on an appeal by Local 595. Plaintiff's petition before the National Labor Relations Board was dismissed on the grounds that neither defendant labor unions nor the Park & Tilford Mutual Association presented any request for recognition and that plaintiff could not lawfully recognize defendants as exclusive bargaining representatives of plaintiff's employees since they did not even claim to represent a majority. (47 N.L.R.B., No. 55.) In the superior court action, the court found that plaintiff suffered irreparable damage and will continue to do so unless the picketing and boycotting cease; that all activities of defendants have been peaceful; that no violence or threats of violence have occurred; and that no false or fraudulent statements were published by the unions other than the statement that plaintiff was "unfair to organized labor" and the publication of plaintiff's name and business on the "Unfair List" of the Food and Drug Council. The prayer of the complaint was that the defendants be enjoined from (1) denominating or listing plaintiff as unfair to organized labor or to defendants; (2) taking any concerted action that would affect the sale or delivery of plaintiff's products, "for the purpose of inducing or compelling plaintiff to violate the National Labor Relations Act." The complaint does not on its face seek to restrain defendants from organizing plaintiff's employees, or to prevent the use of picketing, boycott, strike, or other concerted action for the purpose of securing membership in the Locals. The judgment, however, goes far beyond the relief sought in the complaint. The judgment expressly enjoins defendant: (1) From denominating or listing plaintiff as "unfair." "(2) From interfering with or preventing or attempting to interfere with or to prevent, whether by picket . . . or other threat of concerted action, the sale or delivery of products manufactured or distributed by Park & Tilford

Import Corporation." "(3) From any and all picketing or boycotting of plaintiff or of plaintiff's business, products or merchandise." Defendants appeal.

 In this state "a union may use the various forms of concerted action, such as strike, picketing, or boycott, to enforce an objective that is reasonably related to any legitimate interest of organized labor" but "the object of concerted labor activity must be proper and . . . must be sought by lawful means, otherwise the persons injured by such activity may obtain damages or injunctive relief." (*James* v. *Marinship Corp.*, 25 Cal.2d 721, 728, 729 [155 P.2d 329], and authorities there cited.)

Plaintiff contends that if it entered into a closed shop agreement with defendants or coerced its employees to join defendant unions it would commit an unfair labor practice under the National Labor Relations Act* and that defendants' activities were therefore directed at an unlawful objective. It relies on section 794 of the Restatement of Torts, which declares that it is not a proper objective of concerted labor activities to induce an employer to commit an act that would violate a legislative enactment or be contrary to public policy.

 Defendants concede that they did not represent a majority of plaintiff's employees in an appropriate bargaining unit when they demanded that plaintiff sign a closed shop agreement and coerce its employees to join defendant unions. It cannot be seriously questioned that their demands were not only ill-advised but unlawful, and that plaintiff not only had the right but was under the legal duty to reject those demands. There is no merit in the contention that in reaching this conclusion this court is encroaching upon the exclusive jurisdic-

---

*Section 8(3) of the National Labor Relations Act (29 U.S.C.A. 158(3)) makes it an unfair labor practice for an employer "By discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization; *Provided*, That nothing in sections 151-166 of this title or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in sections 151-166 of this title as an unfair labor practice) to require as a condition of employment membership therein, if such labor organization is the representative of the employees as provided in section 159(a) of this title, in the appropriate collective bargaining unit covered by such agreement when made." Section 8(1) (29 U.S.C.A. 158(1)) declares it to be an unfair practice for an employer "To interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title."

tion of the National Labor Relations Board, for in the proceeding initiated by plaintiff for the certification of a bargaining representative the board held that "the Company could not lawfully recognize either Local 595 or Local 848 as exclusive bargaining representatives of its employees, since they do not even claim to represent a majority." It does not follow, however, that because their demands were unlawful, defendants were precluded from taking concerted action for a closed shop in plaintiff's business. Even though the defendants sought to have the employer commit an unlawful act by joining forces with them in organizing plaintiff's employees, there is a legitimate basis for concerted action by defendants.

█ The closed shop is recognized as a proper objective of concerted labor activities, even when undertaken by a union that represents none of the employees of the employer against whom the activities are directed. (*McKay* v. *Retail etc. Union No. 1067*, 16 Cal.2d 311, 319, 322 [106 P.2d 373]; *Shafer* v. *Registered Pharmacists Union*, 16 Cal.2d 379, 382 [106 P.2d 403]; *C. S. Smith Met. Market Co.* v. *Lyons*, 16 Cal.2d 389 [106 P.2d 414]; *Sontag Chain Stores Co.* v. *Superior Court*, 18 Cal.2d 92 [113 P.2d 689]; see *Fortenbury* v. *Superior Court*, 16 Cal.2d 405 [106 P.2d 411]; *Steiner* v. *Long Beach Local No. 128*, 19 Cal.2d 676, 682 [123 P.2d 20]; *Emde* v. *San Joaquin County etc. Council*, 23 Cal.2d 146, 155 [143 P.2d 20, 150 A.L.R. 916]; *Lisse* v. *Local Union*, 2 Cal.2d 312 [41 P.2d 314]; *In re Lyons*, 27 Cal.App.2d 293 [81 P.2d 190]; *J. F. Parkinson Co.* v. *Building Trades Council*, 154 Cal. 581 [98 P. 1027, 16 Ann. Cas. 1165, 21 L.R.A.N.S. 550]; *Pierce* v. *Stablemen's Union*, 156 Cal. 70 [103 P. 324].)

█ Under the National Labor Relations Act a union may engage in concerted activities to win over a majority of the employees to a closed shop, even though it does not then represent a majority. In section 1 of the National Labor Relations Act (29 U.S.C.A., § 151), Congress declared it "to be the policy of the United States to eliminate the causes of certain substantial obstructions to the free flow of commerce . . . by encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection." As part of that policy employees were guaranteed the right "to engage in concerted activities,

for the purpose of collective bargaining or other mutual aid or protection.'' (§ 7; 29 U.S.C.A., § 157.) The act recognizes among other rights, peaceful picketing and boycotting of an employer by a labor union, whether or not its members are employed by him. Such rights may be exercised to secure a closed shop, for the act specifically designates the closed shop as one of the objectives of collective bargaining. (§ 8(3); 29 U.S.C.A., § 158(3).) Section 2 of the act (29 U.S.C.A., § 152) defines the term ''employee'' as ''not . . . limited to the employees of a particular employer'' and thus makes it clear that the right of employees under section 7 of the act ''to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection'' can be exercised by a union that does not represent the majority required for a closed shop contract or that does not even include any members who are in the employ of the particular employer. (*National Labor R. Board* v. *Peter Cailler Kohler Swiss Chocolates Co.*, 130 F.2d 503, 506; *Montgomery Ward Employees Assn.* v. *Retail Clerks etc. Assn.*, 38 F.Supp. 321; see *Wallace Corp.* v. *National Labor R. Board*, 323 U.S. 248 [65 S.Ct. 238, 89 L.Ed. 216]; *National Labor R. Board* v. *Dahlstrom etc. Co.*, 112 F.2d 756, 758; *National Labor R. Board* v. *Karp etc. Co.*, 134 F.2d 954.) Thus the National Labor Relations Act does not require that a union represent a majority during the period of its activities for a closed shop, but only that it represent a majority when the agreement is made. A union may picket and boycott an employer's business with the object of so discouraging public support of the business that the nonunion workers will face the prospect of the loss of their jobs.* If a union could not do so unless it had the majority necessary for a closed shop agreement, it would be

---

*The Senate Report on the Wagner Act stated: ''There is an even more important reason why there should be no insertion in the bill of any provision against coercion of employees by employees or labor organizations. Courts have held a great variety of activities to constitute 'coercion.' A threat to strike, a refusal to work on material of nonunion manufacture, circularization of banners and publications, picketing, even peaceful persuasion. In some courts closed-shop agreements or strikes for such agreements are condemned as 'coercive.' Thus to prohibit employees from 'coercing' their own side would not merely outlaw the undesirable activities which the word connotes to the layman, but would raise in federal law the ghosts of many much-criticized injunctions issued by courts of equity against activities of labor organizations, ghosts which it was supposed Congress had laid low in the Norris-La Guardia Act.'' (Sen. Rep. No. 573, p. 16, 74th Cong., 1st Sess.: House Rep. No. 1174, p. 16, 74th Cong. 1st Sess.)

deprived of one of the most effective means of obtaining that majority.

Plaintiff contends, however, that such activities are divested of their lawfulness in this case by the findings of the trial court as to their purpose. The trial court found all allegations of the complaint to be true. The complaint alleges that defendants threatened to undertake concerted action "for the purpose of inducing plaintiff to violate the National Labor Relations Act by coercing its salesmen and clerical employees to join unions which had not, at the time said threats were made, and have not at any time, been designated as collective bargaining agent by the majority of either said salesmen or said clerical employees." The complaint also alleges that "Thereafter and in pursuance of such statements and threats, and by reason of such refusal on the part of plaintiff, and with the intent and purpose of coercing plaintiff into interfering with the rights of self organization of its salesmen and clerical employees, as hereinbefore set forth, said Local 595 and said Council, and each of them, took the following action. . . ."

The trial court, like the plaintiff, assumed that since defendants undertook their concerted activities after the rejection of their demands, the purpose of the activities was simply to compel acceptance of the demands. The demands, however, were but a means to an end, and that end was the closed shop. When they failed and other means were undertaken, the end was still the closed shop. It was not scaled down to an immediate and lesser end. There is no evidence that defendants were preoccupied with so futile a purpose as compelling plaintiff's acceptance of their demands merely to place it in the position of violating the law. They were not seeking an empty victory; they were seeking to surmount successfully the hurdles that stood between them and the closed shop. In the early stages of the struggle for a closed shop they made demands that the employer was bound to reject. Having failed in their attempted short-cut to a closed shop, they turned to picketing and boycotting, long recognized as legitimate activities, to achieve that objective. Their abortive attempt to attain the closed shop by means that would have required plaintiff's unlawful participation did not preclude defendants from attempting to win over the majority of plaintiff's employees necessary to make a valid closed shop agreement.

Defendants were then like any other union that does not have the required majority and takes concerted action to pave the way for a closed shop agreement. ▮ An injunction that makes workers forfeit their right to take such action because of previous demands, in a confusion of the lawful objective still unachieved with the means originally attempted to achieve it, is concerned, not with the prevention of unlawful activi-. ties in the future but with the punishment of unlawful activities in the past. (See *Nann* v. *Raimist,* 255 N.Y. 307 [174 N.E. 690, 73 A.L.R. 669]; *J. H. & S. Theatres, Inc.* v. *Fay,* 260 N.Y. 315 [183 N.E. 509]; *May's Furs & Ready to Wear Inc.* v. *Bauer,* 282 N.Y. 331 [26 N.E.2d 279].) There is evidence that after defendants undertook their concerted activities, one Laney, who was connected with defendant union 848, stated to plaintiff's branch manager that a closed shop contract should be signed "without any further trouble, and that would wash the entire thing up." The injunction, however, was not limited to enjoining such demands but prohibited defendant's concerted activities and thus prevented defendants from exercising their right under the law of this state and of the federal government to engage in such activities for a closed shop. Unlawful conduct in connection with concerted activities does not necessarily call for an injunction totally prohibiting the activities. A union may continue its concerted activities if they can be purged of the elements that make them unlawful. (*Lisse* v. *Local Union No. 31, supra,* 2 Cal.2d 312, 318; *May's Furs & Ready to Wear Inc.* v. *Bauer, supra,* 282 N.Y. 331, 343; *J. H. & S. Theatres, Inc.* v. *Fay, supra,* 260 N.Y. 315, 321.) ▮ In the present case, the unlawfulness of defendants' conduct lies in their demands that plaintiff sign a closed shop contract with them and coerce its employees to join defendant unions before they have obtained the requisite majority. Their concerted action for a closed shop is lawful when divorced from these demands; it must be divorced when the demands are enjoined.

Picketing and boycotting unquestionably entail a hardship for an employer when they affect his business adversely. The adverse effect upon the employer's business that may result from the competition among workers for jobs is comparable to the adverse effect on his business that may result from his own competition with other employers. It is one of the risks of business. (See *C. S. Smith Met. Market Co.* v. *Lyons,* 16

Cal.2d 389, 398 [106 P.2d 414].) "The law . . . permits workers to organize and use their combined power in the market, thus restoring, it is thought, the equality of bargaining power upon which the benefits of competition and free enterprise rest. Accordingly, the propriety of the object of workers' concerted activity does not depend upon a judicial determination of its fairness as between workers and employers." (4 Restatement: Torts, p. 118.) In *Stillwell Theatre Inc.* v. *Kaplan,* 259 N.Y. 405 [182 N.E. 63, 84 A.L.R. 6], an employer, bound by a closed shop agreement with one union, suffered great hardship when his theatres were picketed by another that sought to win over his employees. The New York Court of Appeals denied injunctive relief, declaring: "The Court of Appeals has for many years been disposed to leave the parties to peaceful labor disputes unmolested when economic rather than legal questions were involved. The employer, if threatened in his business life by the violence of the unions or by other wrongful acts, might have the aid of the court to preserve himself from damage threatened by the recourse to unlawful means, but the right of the workmen to organize to better their condition has been fully recognized. The fact that such action may result in incidental injury to the employer does not in itself constitute a justification for issuing an injunction against such acts." (See *United States* v. *Hutcheson* 312 U.S. 219, 232 [61 S.Ct. 463, 85 L.Ed. 788]; *Fur Workers' Union No. 72* v. *Fur Workers' Union No. 21238,* 105 F.2d 1.)

The outcome of concerted activities for a closed shop depends largely on public sentiment. No competitive business can endure indefinitely without good will; no group of workers can long define the terms of its employment without public support. In seeking to enjoin defendants' lawful activities, plaintiff in effect asks the court to preclude any possibility that public sentiment will crystallize in favor of a closed shop in plaintiff's business. The court could not do so without denying to defendants their constitutional right of freedom of speech. (*American Federation of Labor* v. *Swing,* 312 U.S. 321 [61 S.Ct. 568, 85 L.Ed. 855]; *Cafeteria Employees' Union* v. *Angelos,* 320 U.S. 293, 296 [64 S.Ct. 126, 88 L.Ed. 58]; *Thornhill* v. *Alabama,* 310 U.S. 88 [60 S.Ct. 736, 84 L.Ed. 1093]; *Carlson* v. *California,* 310 U.S. 106 [60 St.Ct. 746, 84 L.Ed. 1104].)

Injunctions in labor disputes have not generally proved

to be an effective means of settling them; frequently they have aggravated rather than allayed a conflict. They have the deceptive appeal of the quick and easy and therein lies their danger, for disputes between workers and employers, now often complicated by internecine disputes among workers themselves, are not always of a comparable simplicity. There are many currents of conflict in the mainstream of labor relations, variable, unpredictable, subsiding at times as quickly as they arise. For the most part they can best be controlled, not by the courts but by the Legislature, whenever the necessity arises and to whatever degree the public interest requires.

Invoking section 8(3) of the National Labor Relations Act instead of sections 921 and 923 of the California Labor Code in support of the trial court's injunction, plaintiff seeks to revive an issue settled by this court in *McKay* v. *Retail etc. Union No. 1067*, 16 Cal.2d 311 [106 P.2d 373] ; *Shafer* v. *Registered Pharmacists Union*, 16 Cal.2d 379 [106 P.2d 403], and *C. S. Smith Met. Market Co.* v. *Lyons*, 16 Cal.2d 389 [106 P.2d 414].* It was there contended that the concerted

---

*The sameness of the issues in those cases and the present one is manifest. The arguments advanced by plaintiff in this case echo the dissenting opinion in the McKay case that, ''the conclusion is inescapable that the activities in which the Retail Automobile Salesmen's Local Union, No. 1067, are engaged are directed toward a coercion of the employer, Howard Automobile Company, to compel the members of its automobile sales force to join the Retail Automobile Salesmen's Local Union, No. 1067. Any other statement of the purpose of such activities is merely an evasion of the issue. The question may, therefore, be more correctly stated as follows: Is it lawful for a labor union to picket an employer's place of business for the purpose of compelling the employer to coerce his employees to join the picketing union, when the employees are definitely opposed to joining said union, and there is no controversy between the employer and those employees?

''While sections 921 and 923 of the Labor Code remain on the statute books in California, the answer, in our opinion, must be in the negative. Section 921 of the Labor Code provides:

'' 'Every promise made after August 21, 1933, between any employee or prospective employee and his employer, prospective employer or any other person is contrary to public policy if either party thereto promises any of the following:

'' '(a) *To join or to remain a member of a labor organization* or to join or remain a member of an employer organization.

'' '(b) Not to join or not to remain a member of a labor organization or of an employer organization.

'' '(c) To withdraw from an employment relation in the event that he joins or remains a member of a labor organization or of an employer organization.

'' 'Such promise shall not afford any basis for granting of legal or equitable relief by any court against a party to such promise, or against any other persons who advise, urge, or induce, without fraud or violence

activities were unlawful on the ground that their purpose was to compel the employer to violate sections 921 and 923 of the California Labor Code which, like the National Labor Relations Act, gives employees the right of association, self-organization, and designation of representatives free from the interference of employers. In rejecting this contention in *Shafer* v. *Registered Pharmacists Union, supra,* the court stated: "The argument is . . . made that it is absurd to suppose that these provisions were written with the intention of restraining the employer from influencing his employee, while at the same time conferring upon other individuals the right 'to coerce' the same employee through the employer. But the right of workmen to organize for the purpose of bargaining collectively would be effectually thwarted if each individual had the absolute right to remain 'unorganized,' and using the term adopted by the appellants to designate the economic pressure applied against them through the employer, coercion may include compulsion brought about entirely by moral force. Certainly such compulsion is not made contrary to public policy by any statute of this state and is a proper exercise of labor's rights. (*Senn* v. *Tile Layers' Union,*

---

or threat thereof, either party thereto to act in disregard of such promise.'

"Section 923 of the Labor Code furnished the rule of construction for the interpretation of section 921 and the other two sections which comprise this chapter of the Labor Code. Said section is as follows: 'In the interpretation and application of this chapter, the public policy of this state is declared as follows:

" 'Negotiations of terms and conditions of labor should result from *voluntary* agreement between employer and employees. Governmental authority has permitted and encouraged employers to organize in the corporate and other forms of capital control. In dealing with such employers, the individual unorganized worker is helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment. Therefore it is necessary that the individual workman have *full* freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, *and that he shall be free from the interference, restraint, or coercion of employers of labor,* or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.' "

"Section 921(a) of the Labor Code plainly declares a promise by an employee to an employer to join a labor organization or to remain a member of a labor organization to be contrary to public policy. This being so, a boycott or strike or picketing by a labor organization to coerce an employer into an agreement to procure such promise from present and prospective employees becomes an act for the furtherance of an illegal purpose, and therefore properly enjoinable." (16 Cal.2d at 338-340.)

301 U.S. 468 [57 S.Ct. 857, 81 L.Ed. 1229]; *Lauf* v. *E. G. Shinner & Co.*, 303 U.S. 323 [58 S.Ct. 578, 82 L.Ed. 372]; *Fur Workers' Union No. 72* v. *Fur Workers' Union No. 21238* (1940), 105 F.2d 1, aff'd 308 U.S. 522 [60 S.Ct. 292, 84 L.Ed. 443].)

''The argument that provisions similar to those now being considered guarantee employees freedom 'from all interference' in their selection of a collective bargaining agent has been accepted by several state courts. (*Roth* v. *Local Union*, 216 Ind. 363 [24 N.E.2d 280]; *Fornili* v. *Auto Mechanics Union*, 200 Wash. 283 [93 P.2d 422]). Such reasoning was also adopted by the Circuit Court of Appeals in its decisions in *Lauf* v. *E. G. Shinner & Co.*, 82 F.2d 68; 90 F.2d 250, and by the dissenting members of the Supreme Court upon a review of the case, but was rejected by the majority. (303 U.S. 323.) It is not in accordance with the law of this state, as judicially declared for many years, nor is it based upon a fair construction of sections 920 to 923 of the California Labor Code, considering their history and purpose. These sections lay no statutory restraints upon the workers' efforts to secure a closed shop contract from an employer, hence the appellants' picketing was lawful and should not have been enjoined." (16 Cal.2d at 387-388; see, also, *McKay* v. *Retail etc. Union, supra*, at 327; *C. S. Smith Met. Market* v. *Lyons*, 16 Cal.2d 389, 392, 396, 400 [106 P.2d 414].)

The dilemma in these cases arises from a failure to understand that the basic conflict is between the union and nonunion workers. Until that conflict is resolved, the employer is in the unhappy position of a neutral suffering its repercussions. When he seeks to enjoin concerted union activities for a closed shop on the ground that their purpose is to drive him to unlawful interference with his nonunion employees, he is in fact seeking to translate a conflict between groups of workers in which union workers have an even chance of achieving their objective lawfully, into a conflict in which he would become the contestant *ad hoc* for the nonunion workers, armed with a formula that would make the very objective of the union workers unlawful. The real issue of the closed shop would thus be shunted off the field to be replaced by the meretricious issue of the nonunion workers' right to freedom from employer interference. That right, evaluated within the context of the right of workers and unions to take concerted action for a closed shop, does not

include the right to freedom from the risk of employer interference induced by the pressure of such action. Employees are not free from concerted union activities to organize them directly; they are free to resist such activities. Similarly they are not free from concerted union activities designed to affect the employer's business adversely and thereby to organize them indirectly, and the employer is free to resist such activities. There is always the risk that he will yield if his business is adversely affected but the employees cannot be given absolute protection against that risk at the cost of vitiating the right of workers to organize for a closed shop.

Substantial protection to the employees is afforded by the National Labor Relations Act, which makes it unlawful for an employer to compel his employees to accept a closed shop when the union demanding the closed shop does not represent the required majority. Though the employer may run the gamut of inconveniences and uncertainties, and even disruption of his business, he is under the harsh duty to maintain his position as a neutral. "Economic hardships imposed upon an employer as a result of jurisdictional labor disputes do not excuse the employer from compliance with the [National Labor Relations] Act." (*National Labor R. Board* v. *John Engelhorn & Sons*, 134 F.2d 553, 557; *National Labor R. Board* v. *Hudson Motor Car Co.*, 128 F.2d 528; *McQuay-Norris Mfg. Co.* v. *National Labor R. Board*, 116 F.2d 748, 752, cert.den. 313 U.S. 565 [61 S.Ct. 843, 85 L.Ed. 1524]; *National Labor R. Board* v. *Star Pub. Co.*, 97 F.2d 465, 470.) Nevertheless he is as free as any group of workers to inform the public fully as to the difficulties of his position and to enlist public opinion to speed the settlement of the conflict by lending its support to one side or the other as he cannot. Settlement may also be expedited if the National Labor Relations Board exercises its power under section 9(c) of the National Labor Relations Act to take a secret ballot of the employees to determine which group has the required majority. The employer may apply to the board to hold an election and to certify the bargaining agent designated by the majority of employees. (Section 203.1 of the Rules and Regulations implementing the National Labor Relations Act, 29 U.S.C.A. appendix.) Since neither the defendant unions nor the Park & Tilford Mutual Association requested recognition in this case, the board denied plaintiff's application to institute certification proceedings.

If this court assumed the task of protecting the policy of Congress enacted in section 8(3) of the National Labor Relations Act regarding the employer's duty not to interfere with his employee's union affiliations, by enjoining all union activities to preclude the possibility of their inducing the employer to violate that duty, it would go far afield to obtrude sanctions that would run counter to the policy of Congress to safeguard the right of workers to engage in concerted activities, and to its declared intention to make this policy prevail over others in the event of conflict. (See *Hill* v. *Florida,* 325 U.S. 538 [65 S.Ct. 1373, 89 L.Ed. 1782]; *Allen Bradley Co.* v. *Local Union No. 3,* 325 U.S. 797 [65 S.Ct. 1533, 89 L.Ed. 1939]; *United States* v. *Hutcheson,* 312 U.S. 219, 231, 232 [61 St.Ct. 463, 85 L.Ed. 788]; *Lauf* v. *E. G. Shinner & Co.,* 303 U.S. 323, 329 [58 S.Ct. 578, 82 L.Ed. 372]; *Yoerg Brewing Co.* v. *Brennan,* 59 F.Supp. 625.)

If the legality of defendants' concerted action is determined on the basis of state law without regard to federal law, *Shafer* v. *Registered Pharmacists Union,* 16 Cal.2d 379 [106 P.2d 403], and the other California cases cited above are controlling. If their legality is determined on the basis of federal law without regard to state law, the National Labor Relations Act, and the numerous federal cases cited above are controlling. Acts that are lawful under the law of this state and of the United States when considered separately cannot be made unlawful when those laws are considered together without repudiating the policy of each in order to impose state sanctions not wanted by the federal government to protect federal law from possible violation.

Plaintiff, relying on *Magill Bros.* v. *Building Service etc. Union,* 20 Cal.2d 506 [127 P.2d 542], contends that references to it as "unfair" and "unfair to organized labor" were untruthful and that the use of these terms and the placing of its name on the "Unfair List" of defendants' trade paper should be enjoined. In the Magill case, the signs carried by the pickets stated: "This house on strike. A. F. L." There was in fact no strike; the statements were held to be false; and defendants were enjoined from making them. In the present case there has been no falsification of facts. It has been repeatedly held that the terms "unfair" and "unfair to organized labor" carry no odious connotation that an employer is guilty of fraud or dishonorable conduct, but connote only that an employer is conducting his business under con-

ditions that the union considers unfavorable to its members. "In reference to the word 'unfair' it clearly appears that as employed by the defendants and labor organizations generally, it has a technical meaning. . . . Such declaration means, and in this instance was understood by all parties concerned to mean, not that the plaintiff had been guilty of any fraud, breach of faith, or dishonorable conduct, but only that it had refused to comply with the conditions upon which union men would consent to remain in its employ or handle material supplied by it." (*J. F. Parkinson Co.* v. *Building Trades Council*, 154 Cal. 581, 592 [98 P. 1027, 16 Ann.Cas. 1165, 21 L.R.A.N.S. 550], quoted in *C. S. Smith Met. Market Co.* v. *Lyons*, 16 Cal.2d 389, 395 [106 P.2d 414]; *Emde* v. *San Joaquin County etc. Council*, 23 Cal.2d 146, 158-159 [143 P.2d 20, 150 A.L.R. 916]; *Cafeteria Employees Union* v. *Angelos*, 320 U.S. 293, 295 [64 S.Ct. 126, 88 L.Ed. 58]; *Steffes* v. *Motion Picture Machine Operators Union*, 136 Minn. 200, 202 [161 N.W. 524]; *Labor Review Publishing Co.* v. *Galliher*, 153 Ala. 364, 373-374 [45 So. 188, 15 Ann.Cas. 674]; *John R. Thompson Co.* v. *Delicatessen & C. W. Union, Local 410*, 126 N.J.Eq. 119, 123 [8 A.2d 130]; *Cinderella Theater Co.* v. *Sign Writers' Union*, 6 F.Supp. 164, 172; *Watters* v. *Retail Clerks' Union No. 479*, 120 Ga. 424, 427 [47 S.E. 911]; *Campbell* v. *Motion Picture Mach. Operators' Union*, 151 Minn. 220, 226 [186 N.W. 781, 27 A.L.R. 631]; see 1 Teller, op. cit. § 126, pp. 389, 392, § 152, pp. 472-473; see 43 Words and Phrases (perm. ed. [1940]) 195.) In *Cafeteria Employees' Union* v. *Angelos, supra,* the Supreme Court of the United States reversed the judgments of the New York Court of Appeals, which had approved an injunction restraining peaceful picketing in which the term "unfair" had been used, declaring: "to use loose language or undefined slogans that are part of the conventional give-and-take in our economic and political controversies—like 'unfair' . . . is not to falsify facts."

Since defendants, in connection with their concerted activities, made unlawful demands that plaintiff sign a closed shop contract and coerce its employees to join defendant unions, it was permissible for the trial court to enjoin defendants from making such demands. The judgment is therefore modified by limiting the injunction to the enjoining of defendants from making demands in connection with their concerted activities that plaintiff sign a closed shop contract with defendants or coerce its employees to join defendant unions so long

as they do not represent the requisite majority of plaintiff's employees. As so modified the judgment is affirmed.

Gibson, C. J., Carter, J., and Schauer, J., concurred.

EDMONDS, J.—I concur in the conclusion of my associates that the demands of the unions were ill-advised and unlawful, and that the employer was under the legal duty to reject them. But under those circumstances, and in view of the uncontradicted evidence that, after both the picketing and the boycott had been instituted, the unions continued to demand a closed shop contract, in my opinion, the judgment should be affirmed.

The decision modifying the judgment, in effect, declares that because the unions might picket the employer and institute a boycott for the purpose of influencing its employees to join their organizations and thereby obtain a closed shop, the same activities may not be enjoined when carried on to achieve an end openly and admittedly unlawful. Labor unions, as well as employers, should be required to deal in good faith and held accountable in accordance with their stated purposes. The judgment of the trial court was based upon uncontradicted evidence concerning the demands made by the unions and should not now be modified by approving the economic pressure upon grounds different from those declared.

Shenk, J., and Spence, J., concurred.

Respondent's petition for a rehearing was denied February 25, 1946. Shenk, J., Edmonds, J., and Spence, J., voted for a rehearing.